Christi Ann LANDERS, Appellant,

v.

The STATE of Texas, Appellee.

No. 14–01–00186–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

June 26, 2003.

**618**

David R. Bires, Houston, for appellant.

Julie Klibert, Houston, for appellee.

Panel consists of Justices HUDSON, FOWLER and DUGGAN.*

### CORRECTED OPINION

LEE DUGGAN, JR., Senior Justice (Assigned).

Our opinion of April 17, 2003 is withdrawn due to a typographical error, and this corrected opinion is substituted in its place.

Appellant, Christi Ann Landers, was charged with the felony offense of driving while intoxicated. TEX. PENAL CODE ANN. §§ 49.04(a) and 49.09(b).[1] She pled true to the two prior DWI convictions alleged to enhance the primary offense to a felony. A jury rejected her plea of not guilty to the primary offense alleged, and she pled true to the punishment enhancement paragraph alleging a conviction for possession of cocaine, and to a conviction for driving while her license was suspended. The jury assessed her punishment at six years' confinement. Appellant asserts seven issues on appeal.

We affirm.

### I. FACTUAL BACKGROUND

During the evening of September 19, 2000, a truck driven by appellant swerved and struck a roadside post in the 200 block of North Main Street in Highlands, Texas. The State's and appellant's evidence differed by two hours as to time of the accident's occurrence. The State presented evidence that appellant was operating the vehicle at approximately 9:45 p.m., and struck the post because she had lost the normal use of her physical and mental faculties from having earlier ingested drugs. Three police officers and an emergency room physician testified to her impaired mental and physical faculties that night and early the next morning.

Appellant's evidence fixed the time of the accident as two hours earlier than the State's testimony. Appellant presented evidence that her truck had recurring me-

---

* Senior Justice Lee Duggan, Jr., sitting by assignment.
1. A person commits the offense of driving while intoxicated if the person is intoxicated while operating a motor vehicle in a public place. TEX. PEN.CODE ANN. §§ 49.04(a), 49.09(b).

chanical problems—pulling to the right, steering difficulty, acceleration problems, and a malfunctioning battery. She testified that her truck's engine repeatedly died as she drove home from work and that she struck the post because the truck's steering mechanism caused the truck to pull to the right as she attempted to restart the engine. She testified that a couple traveling in a pick-up truck behind her stopped to assist her, helped her move her pick-up truck to the side of the road, and drove her home afterward. She testified that she changed clothes at home, took the prescription medication that caused her later-observed condition, and spent time with a neighbor before the police came and returned her to the accident scene.

## II. Sufficiency of the Evidence

■ In her first two issues, appellant contends the evidence was legally and factually insufficient to prove beyond a reasonable doubt that she had lost the normal use of her physical and mental faculties at the time the State's sole eyewitness to her driving observed her. She asserts the eyewitness to her driving, Wayne Baxter, "failed to articulate sufficient facts" to show that she was intoxicated.

The indictment alleged appellant was intoxicated by not having the normal use of her mental and physical faculties by reason of the introduction of benzodiazepine or a combination of drugs into her body.[2]

### A. Standards of Review

When reviewing the legal sufficiency of the evidence, we view the evidence in a light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Wilson v. State*, 7 S.W.3d 136, 141 (Tex. Crim.App.1999). We do not resolve conflicts of fact or assign credibility to witnesses, as it is the function of the trier of fact to accept or reject any, part, or all of any witness's testimony. See *Adelman v. State*, 828 S.W.2d 418, 421 (Tex.Crim.App. 1992); *Lucero v. State*, 915 S.W.2d 612, 614 (Tex.App.-El Paso 1996, pet. ref'd). We determine only if the explicit and implicit findings of the trier of fact are rational by viewing all the evidence in a light most favorable to the verdict. *See Lucero*, 915 S.W.2d at 614. Any inconsistencies in the evidence are resolved in favor of the verdict. *Id.*

In reviewing the factual sufficiency of the evidence, we view all the evidence for and against the finding in a neutral light and set aside the verdict only if "proof of guilt is so obviously weak as to undermine confidence in the jury's determination, or . . . although adequate if taken alone, is greatly outweighed by contrary proof." *Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim.App.2000). We review the fact-finder's weighing of the evidence and are authorized to disagree with the factfinder's determination. *Clewis v. State*, 922 S.W.2d 126, 133 (Tex.Crim.App.1996).

Our review, however, must be appropriately deferential so as to avoid substituting our own judgment for that of the factfinder. *Jones v. State*, 944 S.W.2d 642, 648 (Tex.Crim.App.1996). The factfinder is the judge of the credibility of the wit-

---

**2.** The Texas Penal Code defines "intoxication" in pertinent part as:

    (A) not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, or any other substance into the body . . .

Tex. Pen.Code Ann. § 49.01(2)(A)(B).

nesses and may "believe all, some, or none of the testimony." *Chambers v. State*, 805 S.W.2d 459, 461 (Tex.Crim.App.1991). An appellate court may not interfere with a jury's resolution of conflicts in the evidence. *Davila v. State*, 930 S.W.2d 641, 647 (Tex.App.-El Paso 1996, pet. ref'd); *Taylor v. State*, 921 S.W.2d 740, 746 (Tex. App.-El Paso 1996, no pet.).

### B. Legal Sufficiency

In her first issue, appellant asserts there is no evidence that, at the time she operated a motor vehicle, she had lost the normal use of her physical or mental faculties due to the use of drugs or alcohol, or a combination of both.

Wayne Baxter testified that at approximately 9:45 p.m., he saw appellant driving very slowly and erratically across lanes of the road; he was forced to the side of the road to avoid an accident when she swerved toward his car as he tried to pass her. Baxter saw appellant's truck hit a pole beside the road, after which he saw a woman of appellant's stature get out of the truck, appearing dazed and having difficulty moving around. Baxter testified he regularly gets off of work at 9:00 p.m., it takes him 45–50 minutes to drive home, and he was about ten minutes from home when the incident occurred. Baxter parked beside the road and called 911. He then saw a man and a woman drive up in a small truck, push appellant's truck to the side of the road, and drive off with her. Baxter followed them, saw them drive into a nearby trailer park, and returned to the scene of the accident. There, he told Deputy Constable Landers, who had arrived in the meantime, what happened.

Deputy Landers testified he received a dispatch call about 10:00 p.m. and arrived at the scene within five minutes. He spoke to Baxter briefly, went to appellant's trailer park, and found her sitting in the truck that drove her home. There, within fifteen minutes of the accident, Landers observed that appellant's eyes were wide open, that she was semi-coherent and that she spoke with slurred words.

Landers returned appellant to the scene of the accident about 10:25 p.m., and turned the investigation over to Deputy Sheriff Seward, who first observed appellant approximately thirty minutes after the accident. Seward testified that appellant was unable to stand without assistance, fell back onto the patrol car, and slurred her speech. In his opinion, appellant had lost the normal use of her mental or physical faculties. Seward took her into custody for observation, and drove her to the police station; because he smelled no alcohol on her breath, he called ahead for a drug recognition expert.

Deputy Sheriff Barnett, a drug recognition specialist, observed appellant at the police station within an hour and twenty minutes of the accident. Barnett testified that appellant slurred her words, stumbled, had poor coordination, and was sluggish. Her performance was poor on field sobriety tests Barnett conducted and videotaped. The videotape was admitted into evidence. Appellant admitted to Barnett that she had taken Prozac, Valium, and pain medication that evening. At the police station, she remained unable to walk without assistance, was too incapacitated to give a urine sample, and became delirious and incoherent. Because Barnett feared appellant had had an overdose, he had her transported to the hospital. There, the emergency room physician, Dr. Nguyen, observed that appellant arrived asleep and had to be awakened. Appellant told Dr. Nguyen that she had taken fifteen tablets of Propacet (a combination of Tylenol and opiate drug) six hours earlier, at about 7:00 p.m. Dr. Nguyen testified that Propacet alone, and in combination with

Valium, would cause drowsiness; that the maximum effect of the drugs would be approximately two hours after ingestion, and would continue for some time. In Dr. Nguyen's opinion, appellant had lost the normal use of her mental faculties based on an overdose of the opiate drug, Propacet.

Viewed in the light most favorable to the verdict, the evidence is legally sufficient to support the jury's verdict. *Lucero*, 915 S.W.2d at 614. We overrule appellant's first issue.

### C. Factual Sufficiency

Appellant testified and presented an alternative explanation to the State's as to when and why the accident occurred, and her condition at the time of the accident, at the hospital, and when the officers observed her. She claimed the accident took place two hours earlier, at about 7:45–8:00 p.m. She testified that the clutch was out on her truck, and her momentary inattention plus the poor working condition of her truck caused the accident. Her parents testified that the truck was in poor repair and had been in the shop; that her mother had driven her to work that morning; and that her father had her truck towed to the parking lot at her work that day.

Additionally, appellant's neighbor testified that she visited with appellant that evening between 8 p.m. and 8:45 p.m., and that she observed no signs of intoxication. Appellant's explanation for her condition was that she took her nightly prescription medication at home during the two hours after the accident occurred, and thus came under the undisputed influence of drugs after the accident. Moreover, no peace officer smelled alcohol on her breath, and she passed an intoxilizer test. Therefore, she argues, the evidence was factually insufficient to support a finding that she lost her mental faculties while operating a motor vehicle.

The jury is the sole judge of the facts, the witnesses' credibility, and the weight to be given the evidence. *Clewis v. State*, 922 S.W.2d at 129. The jury may believe or disbelieve any portion of the witnesses' testimony. *Beckham v. State*, 29 S.W.3d 148, 151 (Tex.App.-Houston [14th Dist.] 2000, pet. ref'd). Contradictions or conflicts in the witnesses' testimony do not destroy the sufficiency of the evidence, but go to its weight and to the credibility the jury assigns to the witnesses. *Id.* The jury exclusively resolves conflicting testimony, and a reviewing court may not substitute its conclusions for the jury's, nor interfere with the jury's resolution of conflicts in the evidence. *Id.* at 152.

Based on appellant's own admission to Dr. Nguyen that she took 15 tablets of Propacet at about 7 p.m. that night, and the observations of the independent eyewitnesses—Baxter, the three peace officers, and Dr. Nguyen—we conclude the evidence was factually sufficient to support the finding that she was intoxicated while operating her vehicle at the time of the accident. We overrule appellant's second issue.

### III. Failure to Exercise a Peremptory Challenge Against A Veniremember After A Challenge for Cause is Denied

Appellant's issues three, four, and five assert error in allowing "an openly biased" veniremember to be empaneled as a juror.

At the conclusion of jury voir dire, the trial court heard counsel for both sides state their challenges for cause at a bench conference. TEX.CODE.CRIM. PROC. ANN., art. 35.16(a) (Vernon 1989); TEX.CODE CRIM. PROC. ANN., art. 35.16(c) (Vernon Supp.2001). Both sides agreed to challenge certain veniremembers, and the trial

court sustained other challenges by both State and defense, but refused appellant's[3] trial counsel's challenge for cause against veniremember number 37, Ms. Campos. Thereafter, appellant's trial counsel exercised only two of his ten peremptory challenges. Tex.Code.Crim. Proc. Ann., art. 35.15(b) (Vernon Supp.2001). Neither was used against Ms. Campos. When Ms. Campos and the others selected were seated in the jury box, the trial court asked if either side objected to the panel. Neither side objected, and the jury was sworn.

■ Appellant claims in her third issue that her trial attorney rendered ineffective assistance of counsel by failing to exercise a peremptory challenge to strike Ms. Campos, "an openly biased juror."

## A. Ineffective Assistance of Counsel— Standard of Review

To demonstrate ineffective assistance of counsel, an appellant must show, first, that counsel's performance was deficient, *i.e.,* it fell below an objective standard of reasonableness, and, second, that appellant was prejudiced in that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Tong v. State,* 25 S.W.3d 707, 712 (Tex.Crim.App.2000). To be sustained, an allegation of ineffective

assistance must be affirmatively demonstrated in the record. *McFarland v. State,* 928 S.W.2d 482, 500 (Tex.Crim.App. 1996).

In reviewing ineffectiveness claims, scrutiny of counsel's performance must be highly deferential. *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052; *Tong,* 25 S.W.3d at 712. A court must indulge, and a defendant must overcome, a strong presumption that the challenged action might be considered sound trial strategy under the circumstances. *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052; *Tong,* 25 S.W.3d at 712. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight and to evaluate the conduct from counsel's perspective at the time. *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052. Thus, the presumption that an attorney's actions were sound trial strategy ordinarily cannot be overcome absent evidence in the record of the attorney's reasons for his conduct. *Busby v. State,* 990 S.W.2d 263, 268–69 (Tex.Crim.App.1999).

During the trial court's initial voir dire questioning of the venire, Ms. Campos gave a series of answers indicating that she could not accept the principle that the indictment is no evidence of guilt.[4]

Later in its voir dire, however, the trial court discussed the concepts of presump-

---

**3.** The record is unclear as to whether defense counsel actually challenged No. 37, Ms. Campos, or not. The State appeared to challenge No. 37 initially, but then commented that "she might have been rehabilitated." Defense counsel, in dealing with panel members numbers 27 through 39, stated, in part, "[34], I believe that person should be excluded based on statements he believes she's guilty; 35; 36, same reason; 37; 38. I may have gone one over. 38, I believe, should be taken off." The trial court responded, "State and Defense challenge to 35 is granted. Defense challenge to 36 is granted. *Challenge to 37 is denied.* And the defense challenge to 38 is granted. All right." (Emphasis added).

Whether or not a defense challenge to No. 37 was made is uncertain. The trial court may have understood the reference to 37 to be the one "gone one over," since the trial court sustained the defense challenge to No. 38.

**4.** To a series of questions by the court, Campos answered, "... If it's a third time, I lean towards that she is guilty just from the beginning. Granted, I could be convinced that she's not guilty, but going into the jury, I'm already biased that she is." When the trial court then asked if she understood that "the State has to prove she's guilty," Ms. Campos answered, "Right, but, from the beginning, I'm already thinking that [she's guilty]." In

tion of innocence and the State's burden to prove guilt. During his own voir dire examination of the panel, appellant's trial counsel reiterated that the State must prove its allegations, and gave a hypothetical example on the point.

■ Appellant's amended motion for new trial alleged numerous complaints of ineffective assistance by her trial counsel, all of which he disputed in his affidavit that accompanied the State's response to appellant's amended motion for new trial. However, the amended motion for new trial did not raise ineffective assistance of counsel in conjunction with biased jurors, voir dire, and peremptory challenges—issues appellant now asserts. An appellant who chooses to litigate claims of ineffective assistance of counsel in the trial court must present those claims to the trial court in order to preserve them for appeal; claims not litigated are procedurally defaulted and may not be argued on appeal. *See Henderson v. State*, 962 S.W.2d 544, 558 (Tex.Crim.App.1997). *See also Robinson v. State*, 16 S.W.3d 808, 809 (Tex.Crim. App.2000).

Because failure to use a peremptory challenge against Ms. Campos was not pled in her motion for new trial, appellant's trial counsel was not put on notice to answer the claim in his response affidavit. Further, appellant's amended motion for new trial was not presented and heard (as will be discussed in issue seven). The record therefore contains no evidence as to why appellant's trial counsel did not exercise a peremptory challenge against Ms. Campos.

■ Counsel may have agreed with the prosecutor that Ms. Campos was rehabilitated. An appellate court must presume that trial counsel had a plausible reason for his actions. *Thompson v. State*, 9 S.W.3d 808, 814 (Tex.Crim.App.1999). In responding to questions later posed during voir dire, some prospective jurors answered by name and/or numbers, and others did not. Some unidentified jurors expressed opinions favorable to appellant; Ms. Campos may have been one of them. Defense counsel may have observed an indication, after he stated his jury voir dire hypothetical, that led him to conclude that she was not biased, as her initial quoted answers would indicate, or that she would be sympathetic on some issue.

To know defense counsel's reasoning concerning Ms. Campos would require us to speculate, which we cannot do. *Jackson v. State*, 877 S.W.2d 768, 771 (Tex.Crim. App.1994). The presumption of sound trial strategy has not been overcome. Appellant's third issue is overruled.

### B. Denial of Federal and State Constitutional Rights

■ Appellant's issues four and five assert that the seating of a juror who could not give her the presumption of innocence denied her the constitutional right to an impartial jury guaranteed by both the Sixth and 14th Amendments to the United States Constitution (issue four) and Article I, Section 10 of the Texas Constitution (issue five).

Appellant argues that Ms. Campos should not have served on the jury because

response to further questions, Campos responded that in the event the State's evidence wholly failed, "No, I probably won't" find her guilty just because of the indictment's allegations. When asked if she would base her decision on the evidence that she heard in the courtroom, Campos answered, "They would really have to mess up pretty bad." When finally asked whether she would base her decision on the evidence, or was she thinking, "because she's here accused of this, you're going to find her guilty no matter what the State does?" Campos answered, "That could be possible."

she was biased against appellant, which deprived appellant of a fair and impartial jury. Juror bias against a defendant does not constitute an absolute disqualification from jury service. TEX.CODE CRIM. PROC. ANN., art. 35.19 (Vernon 1989). Thus, a prospective juror can be excused from service only by agreement, by challenge for cause, or by peremptory challenge of either party. TEX.CODE CRIM. PROC. ANN., art. 35.15(b) (Vernon Supp.2001); TEX.CODE CRIM. PROC. ANN., art. 35.16(d) (Vernon 1989); TEX.CODE CRIM. PROC. ANN., art. 35.16(c) (Vernon 2001).

The trial court's denial of appellant's challenge for cause is the basis for these constitutional complaints, and the relevant evidentiary and procedural facts are the same as those in issue three.

■ To preserve error in the denial of a challenge for cause, an appellant must show on the record: (1) a clear and specific challenge for cause, articulating grounds; (2) that all peremptory challenges were exhausted; (3) that appellant sought and was denied an additional peremptory challenge; and (4) that an objectionable juror served. *Harris v. State*, 790 S.W.2d 568, 581 (Tex.Crim.App.1989). Assuming appellant's trial counsel made the challenge for cause for a clearly articulated reason, he thereafter failed to use an available peremptory challenge against Ms. Campos, and the issue was not preserved for review.

Appellant's issues four and five are overruled.

## C. Failure to request and present evidence at a motion for new trial hearing

■ In her sixth issue, appellant asserts she was denied effective assistance of counsel because her first post-trial attorney[5] failed to present a motion for new trial and obtain an evidentiary hearing. Attorney David Boyer timely substituted for trial counsel, Andrew J. Lannie, and filed a motion and an amended motion for new trial, each containing supporting affidavits. However, the record contains no evidence that post-trial counsel pursued obtaining a hearing. TEX.R.APP. P. 21.6. The amended motion for new trial was overruled by operation of law. TEX.R.APP. P. 21.8.

Appellant asserts that a hearing on her motion for new trial was necessary to develop the record concerning her trial counsel's lack of preparation, erroneous advice, and poor health. Because her post-trial counsel neither presented nor requested a hearing on either motion, she asserts he effectively abandoned her, and prevented her from establishing her trial counsel's ineffective assistance. We disagree.

Because there is no evidence of post-trial counsel's reasons for not presenting the amended motion for new trial, we would be required to speculate to assume this was not a strategic decision.

Appellant's amended motion for new trial asserted: (1) the State failed to prove the prior convictions which enhanced the DWI to a felony; and (2) her trial counsel provided ineffective assistance. The amended motion is supported by affidavits from appellant, her mother, and an attorney formerly associated with trial counsel, each exhaustive in its discussion of her trial counsel's alleged transgressions.

However, none of the allegations in the amended motion for new trial set out facts entitling appellant to a new trial. For

**5.** Appellant has had three attorneys in this case: Andrew J. Lannie, trial counsel, David K. Boyer, post-conviction counsel, and David R. Bires, appellate counsel.

instance, appellant testified at trial about her prior DWI convictions, and documentation of the convictions was admitted as exhibits; the amended motion's allegation that the State failed to prove her prior conviction was therefore baseless.[6]

Appellant alleged ineffective assistance by her trial counsel in failing to call additional witnesses, failing to accept a plea bargain for probation (for which she was ineligible due to her prior convictions), and failing to be prepared generally. Her trial attorney's lengthy controverting affidavit, submitted with the State's response, addressed strategic decisions behind each alleged act of ineffective assistance, and showed that a hearing on these complaints would have been a swearing match. For example, trial counsel explained that he did not call as witnesses the two people who drove appellant home from the accident because he and appellant were concerned that evidence would show that the two were on their way to appellant's home to buy drugs. Trial counsel's affidavit cites the caselaw demonstrating appellant's ineligibility for probation, recounts his consultations regarding the State's plea offer during trial, and reiterates appellant's repeated protestations of innocence.

Appellant states she was abandoned on appeal because her post-trial counsel did not present the motion for new trial and conduct an evidentiary hearing on it, and that without a lawyer, she was prejudiced. Appellant was not abandoned, but was at all time represented by counsel during this critical post-trial period. A notice of appeal, a motion for new trial, and an amended motion for new trial were all timely filed on her behalf by post-trial counsel. *See Smith v. State,* 17 S.W.3d 660, 663 (Tex.Crim.App.2000), *citing Oldham v. State,* 977 S.W.2d 354, 363 (Tex.Crim.App. 1998). *Massingill v. State,* 8 S.W.3d 733,

735–36 (Tex.App.-Austin 1999, no pet.), is distinguishable because that defendant was left without appointed counsel during the time for filing a motion for new trial.

Appellant claims her post-trial attorney rendered ineffective assistance of counsel by failing to present her motion and amended motion for new trial. A reviewing court presumes that defense counsel's actions are sound trial strategy. *Jackson,* 877 S.W.2d at 771. To defeat the presumption of reasonable professional assistance, allegation of ineffective assistance of counsel "must be firmly founded in the record and the record must affirmatively demonstrate the alleged ineffectiveness." *McFarland,* 928 S.W.2d at 500. Because the record is silent as to why appellant's post-trial counsel did not prosecute the motions for new trial, finding defense counsel ineffective would require this Court to speculate inappropriately regarding counsel's actions. *See Stults v. State,* 23 S.W.3d 198, 208 (Tex.App.-Houston [14th Dist.] 2000, pet ref'd).

"[A] substantial risk of failure accompanies an appellant's claim of ineffective assistance of counsel on direct appeal.... In the majority of instances, the record on direct appeal is simply undeveloped and cannot adequately reflect the failings of trial counsel." *Thompson,* 9 S.W.3d at 813–14; *Tong,* 25 S.W.3d 707, 714, n. 10. Faced with the State's response and her trial counsel's detailed controverting affidavit, appellant's post-trial counsel may well have made a strategic decision not to pursue a hearing.

Accordingly, appellant has not rebutted the presumption that her post-trial attorney's decision not to prosecute the amended motion for new trial was within the

---

**6.** Appellate counsel recognized this fact by not presenting such an issue on appeal.

range of competent representation. Appellant's sixth issue is overruled.

### IV. LACK OF HEARING ON MOTION FOR NEW TRIAL

In her seventh and final issue, appellant asserts that, apart from her post-conviction counsel's failures, the trial court abused its discretion by not conducting an evidentiary hearing on her amended motion for new trial and allowing it to be overruled by operation of law. When an accused presents a motion for new trial raising matters that could entitle him to relief and that are not determinable from the record, the trial court abuses its discretion in failing to hold a hearing. *Reyes v. State*, 849 S.W.2d 812, 816 (Tex.Crim. App.1993).

The mere filing of a motion for new trial is insufficient to show "presentment." *Reyes v. State*, 849 S.W.2d 812, 816 (Tex. Crim.App.1993); *Butler v. State*, 6 S.W.3d 636 (Tex.App.-Houston [1st Dist.] 1999, pet. ref'd). The record establishes that appellant timely *filed* her motion and amended motion for new trial, but it does not show that she *presented* her amended motion by bringing it to the trial court's attention or actual notice. To preserve error, a defendant must not only *file* the motion properly, but must also *present* the motion to the trial court within the statutory time frame. *Id.; Carranza v. State*, 960 S.W.2d 76, 79 (Tex.Crim.App.1998). On appeal, the record must demonstrate that the movant sustained his or her burden of actually delivering the motion to the trial court, or bringing the motion to the trial court's attention. *Carranza*, 960 S.W.2d at 79–80; *Sexton v. State*, 51 S.W.3d 604 (Tex.App.-Tyler 2000, pet. ref'd). Thus, the trial court committed no error and did not abuse its discretion by failing to hold a hearing on a motion for new trial not shown to have been present-

ed to it. *Enard v. State*, 764 S.W.2d 574, 575 (Tex.App.-Houston [14th Dist.] 1989, no pet.) (holding a motion for new trial was not timely presented when nothing in the record indicates trial court was on notice of desire for hearing to present evidence, and motion for new trial was overruled by operation of law). Appellant's seventh issue is overruled.

### V. CONCLUSION

We affirm the trial court's judgment.