In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-03-00242-CR
______________________________


RYAN DENEAL COLEMAN, Appellant
Â 
V.
Â 
THE STATE OF TEXAS, Appellee


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

On Appeal from the 188th Judicial District Court
Gregg County, Texas
Trial Court No. 30572-A


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 



Before Morriss, C.J., Ross and Carter, JJ.
Memorandum Opinion by Justice Ross


MEMORANDUM OPINION

Â Â Â Â Â Â Â Â Â Â On August 18, 2003, Ryan Deneal Coleman pled guilty to aggravated assault
without the benefit of a plea agreement regarding punishment. See Tex. Pen. Code Ann.
Â§ 22.02 (Vernon Supp. 2004). After hearing the evidence and arguments on punishment,
the trial court sentenced Coleman to ten years' imprisonment and entered an affirmative
finding that Coleman used or exhibited a deadly weapon during the commission of the
offense. 
Â Â Â Â Â Â Â Â Â Â Coleman filed a verified motion for new trial September 9, 2003, alleging the guilty
plea was coerced. The trial court conducted no hearing on the motion, which was
overruled by operation of law. See Tex. R. App. P. 21.8(c). On appeal to this Court,
Coleman contends the trial court abused its discretion by allowing the motion for new trial
to be overruled by operation of law without conducting a hearing. Coleman then asks us
to determine the appropriate remedy should we sustain his first point of error. We affirm
the trial court's judgment.
Â Â Â Â Â Â Â Â Â Â A criminal defendant must file a motion for new trial only when it is necessary that
facts not already part of the trial record be adduced. Tex. R. App. P. 21.2. To be timely,
the motion for new trial must be filed within thirty days from the day the trial court imposes
or suspends sentence. Tex. R. App. P. 21.4(a). Further, the trial court must be "presented"
with the motion within ten days of its filing. Tex. R. App. P. 21.6. Thereafter, the trial court
has seventy-five days from the date it originally imposed or suspended sentence to rule on
the motion for new trial. Tex. R. App. P. 21.8(a). If the trial court grants a new trial, it must
do so by a written order within the prescribed time frame. Tex. R. App. P. 21.8(b). If the
trial court does not act on the motion for new trial within seventy-five days of imposing or
suspending sentence, the motion for new trial is overruled by operation of law. Tex. R.
App. P. 21.8(c).
Attachment of Appellate Counsel's Affidavit to Coleman's Brief on Appeal
Â Â Â Â Â Â Â Â Â Â In his brief to this Court, Coleman's appellate counsel submitted an affidavit that
discusses a conversation counsel had with the trial court. This affidavit is not part of the
official record in this case. As we stated in Yarbrough v. State, 57 S.W.3d 611 (Tex.
App.âTexarkana 2001, pet. ref'd), under the Texas Rules of Appellate Procedure,
specifically Tex. R. App. P. 34.6, we may not, in a case on direct appeal, consider an
affidavit that was not part of the record before the trial court, unless that affidavit regards
a matter affecting our jurisdiction. Id. at 615â16; see also Hernandez v. State, 84 S.W.3d
26, 32 (Tex. App.âTexarkana 2002, pet. ref'd) (appellate court could not consider former
prosecutor's affidavit regarding flooding of Harris County criminal courthouse because
affidavit not part of trial court's record). The affidavit submitted by appellate counsel, and
not admitted into evidence in the trial court, does not regard a matter affecting our
jurisdiction. We therefore may not consider the affidavit Coleman's appellate counsel
attached to the appellant's brief.
Analysis of Issues Presented
Â Â Â Â Â Â Â Â Â Â Turning to Coleman's first point of error, he asks this Court to determine whether the
trial court abused its discretion by failing to conduct a hearing on Coleman's motion for new
trial. In some instances, a trial court abuses its discretion when it does not conduct a
hearing on a defendant's motion for new trial that raises matters not discernible from the
record. Reyes v. State, 849 S.W.2d 812, 816 (Tex. Crim. App. 1993); Landers v. State,
110 S.W.3d 617, 626 (Tex. App.âHouston [14th Dist.] 2003, pet. ref'd). Nonetheless, the
mere filing of a motion for new trial is insufficient to show "presentment" of the motion, as
required under the Texas Rules of Appellate Procedure. Tex. R. App. P. 21.6; Carranza
v. State, 960 S.W.2d 76, 78 (Tex. Crim. App. 1998). As defined by the Texas Court of
Criminal Appeals, "presentment," as Rule 21.6 uses that term, requires the trial court be
placed on actual notice the movant desires a hearing or a ruling on the motion for new trial. 
Carranza, 960 S.W.2d at 78 (interpreting former Rule 31(e)(3) of the Texas Rules of
Appellate Procedure). Typically, the movant will satisfy the presentment requirement when
the record on appeal shows the movant actually delivered the motion to the trial court or
otherwise brought the motion to the trial court's attention. Id. at 79. Notice might be
"evidenced by the judge's signature or notation on a proposed order or by a hearing date
set on the docket." Id. at 81 (Overstreet, J., concurring).
Â Â Â Â Â Â Â Â Â Â In this case, there is nothing in the official appellate record to show Coleman
presented his motion for new trial to the court below. Coleman therefore has not satisfied
his burden under Tex. R. App. P. 21.6. 
Â Â Â Â Â Â Â Â Â Â Because we overrule Coleman's first point, we need not reach Coleman's second
point of error, as it is contingent on his prevailing under his first point of error. 
Â Â Â Â Â Â Â Â Â Â We affirm the trial court's judgment.


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Donald R. Ross
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Justice


Date Submitted:Â Â Â Â Â Â April 5, 2004
Date Decided:Â Â Â Â Â Â Â Â Â April 9, 2004

Do Not Publish



 "brief legal issues" or disclose more than "basic assertions"). 

 Although the Gilders disclosed the wrong vehicle (the FLSA) for their cause of
action, Moore was still on notice that the Gilders would be asserting involuntary servitude
under Section 1981 as the basis for their lawsuit. Before trial, the Gilders provided a
proposed jury charge which included the involuntary servitude claim as arising under
Section 1981. Moore objected to this proposed charge on the basis of failure to disclose,
but the trial court found that fair notice had been given. We agree that Moore had
adequate notice.

 Moore also contends there was no evidence of racial discrimination to support the
jury question submitted. In objections to the charge, Moore further argued there were
legitimate nondiscriminatory reasons for discharging the Gilders and that the trial court
erred by not submitting a charge that conformed with the federal burden-shifting analysis
used when discriminatory treatment is alleged to have occurred. See Reeves v.
Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142-43, 120 S.Ct. 2097, 147 L.Ed.2d 105,
116-17 (2000); St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506-07, 113 S.Ct. 2742, 125
L.Ed.2d 407, 415-16 (1993); Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252-53, 101 S.Ct. 1089, 67 L.Ed.2d 207, 215 (1981); McDonnell Douglas Corp. v. Green, 411
U.S. 792, 802-03, 93 S.Ct. 1817, 36 L.Ed.2d 668, 677-78 (1973). 

 Moore further contends that the jury charge was an improper statement of the law. 
Moore's contention is that involuntary servitude is not the type of activity that comes under
the provisions of Section1981. Moore is correct that involuntary servitude is not expressly
enumerated in the federal statute. (4)
 The main focus of Section 1981 is to grant to all people
rights "enjoyed by white citizens." (5)
 The term "economic oppression" as defined in the
court's charge to the jury is also not a part of the statute. See 42 U.S.C.A. § 1981. Moore
contends that to prove a claim under Section 1981, the Gilders were required to show they
were not afforded the full and equal benefit of the law as enjoyed by white people, not that
they were forced to work off the clock. (6)
 

 It is clear that Section 1981 includes protection from involuntary servitude. The sole
purpose of Section 1981 was to enforce the Thirteenth Amendment. See Tillman v.
Wheaton-Haven Recreation Ass'n, 410 U.S. 431, 439 n.11, 93 S.Ct. 1090, 35 L.Ed.2d 403,
410 n.11 (1973). It has long been settled that the Thirteenth Amendment "is not a mere
prohibition of State laws establishing or upholding slavery, but an absolute declaration that
slavery or involuntary servitude shall not exist in any part of the United States." Memphis
v. Greene, 451 U.S. 100, 120, 101 S.Ct. 1584, 67 L.Ed.2d 769, 785 (1981) (quoting Civil
Rights Cases, 109 U.S. 3, 20, 3 S.Ct. 18, 27 L.Ed. 835, 842 (1883)). The underlying
purpose of Section 1981 was to enforce Thirteenth Amendment rights, including the right
to freedom from "all . . . forms of compulsory service." Slaughter-House Cases, 83 U.S.
36, 90, 21 L.Ed. 394, 413 (1873). 

 However, discrimination is a key element when asserting a cause of action under
Section 1981. See 42 U.S.C.A. Â§ 1981; Gen. Bldg. Contractors Ass'n v. Pennsylvania, 458
U.S. 375, 388-89, 102 S.Ct. 3141, 73 L.Ed.2d 835, 848-49 (1982). The United States
Supreme Court has found that Section 1981 can only be violated by purposeful
discrimination. (7)
 Gen. Bldg. Contractors Ass'n, 458 U.S. at 388-91. The primary thrust of
Section 1981 has been to deal with discrimination in the employment context. (8) See 42
U.S.C.A. Â§ 1981; Davis v. County of Los Angeles, 566 F.2d 1334, 1340 (9th Cir. 1977),
vacated on other grounds, 440 U.S. 625, 99 S.Ct. 1379, 59 L.Ed.2d 642 (1979); Carter v.
Gallagher, 452 F.2d 315, 325 (8th Cir. 1971). Therefore, Moore is correct that
discrimination is vital to maintenance of a Section 1981 cause of action and that a Section
1981 claim cannot be sustained without a showing of purposeful discrimination.

 In a motion for rehearing, the Gilders assert that Section 1981 affords them a
remedy for their alleged retaliation claims without corresponding claims for discrimination
and quote the following language from Goff v. Cont'l Oil Co., 678 F.2d 593, 598 (5th Cir.
1982): "Section 1981 would become meaningless if an employer could fire an employee
for attempting to enforce his rights under that statute." However, the context of this
quotation makes clear this case did involve a claim of racial discrimination:

 We hold that Â§ 1981 does encompass claims of retaliation when an adverse
action is taken in response to a person's filing of an EEOC charge or civil
rights lawsuit in which racial discrimination is alleged. . . . Were we to protect
retaliatory conduct, we would in effect be discouraging the filing of
meritorious civil rights suits and sanctioning further discrimination against
those persons willing to risk their employer's vengeance by filing suits. 
Section 1981 would become meaningless if an employer could fire an
employee for attempting to enforce his rights under that statute.


Id. (emphasis added). 


 The Gilders also point the Court to Shackelford v. DeLoitte & Touche, L.L.P., 190
F.3d 398 (5th Cir. 1999). In a footnote, the Shackelford court said, "evidence sufficient to
support a claim of retaliation is not necessarily sufficient to support a claim of
discrimination 'because of' race." Id. at 405 n.4 The Gilders attempt to use Shackelford
to say again that a Section 1981 claim for retaliation does not require proof of racial
discrimination. We disagree.

 Shackelford sued DeLoitte & Touche for violations of Title VII of the Civil Rights Act
of 1964, 42 U.S.C.A. Â§ 2000e, et seq.; 42 U.S.C. A. Â§ 1981, and the Texas Commission
on Human Rights Act, Tex. Lab. Code Ann. Â§ 21.001, et seq. Shackelford, 190 F.3d at
403. Shackelford specifically accused DeLoitte & Touche of wrongful termination based
on racial discrimination and based on retaliation for engaging in activity protected by Title
VII. Id. The trial court in Shackelford granted DeLoitte & Touche's motion for summary
judgment on all claims. Shackelford appealed the summary judgment. The Fifth Circuit
affirmed in part, reversed in part, and remanded for further proceedings consistent with the
opinion. Id. at 401. 

 The court affirmed the summary judgment on the claim of discrimination. Id. at
405-06. The court found that Shackelford met her prima facie case of discrimination and
thereby successfully raised a presumption of discrimination. Id. at 404. The burden then
having been shifted to the defendant, DeLoitte & Touche rebutted the presumption by
providing a legitimate, nondiscriminatory reason for its actions. Id. Once DeLoitte &
Touche satisfied its burden of rebutting the presumption, Shackelford was required to
prove the proffered reasons were pretextual. Id. Once a Title VII case reaches the pretext
stage, the only question on summary judgment is whether there is a conflict in substantial
evidence to create a jury question regarding discrimination. Id. The court in Shackelford
found "[the] evidence, even when viewed in the light most favorable to Shackelford, is
insufficient to create a jury question regarding the discriminatory termination claim." Id. at
405. 

 The standards for proving a discrimination claim and a retaliation claim are different. 
Id. at 405 n.4. Though the court affirmed the trial court on the discrimination claim, it
reversed the trial court on the claim of retaliation, finding there was sufficient evidence to
support an inference that retaliation was the "but for" cause of Shackelford's termination. 
Id.Â at 407. However, the court reached this point because the case reached the pretext
stage: "Since this case reached the pretext stage, the only question on summary
judgments is whether the evidence of retaliation, in its totality, supports the inference of
retaliation." Id. The court reversed and remanded the claim of retaliation because it found
sufficient evidence to support an inference that retaliation was the "but for" cause of
Shackelford's termination. Id.

 Shackelford is distinguishable from this case. Shackelford involved claims under
Title VII, Section 1981, and the Texas Commission on Human Rights Act. This case
involves only a claim under Section 1981. The Gilders dropped all their discrimination
claims and relied solely on their claims of involuntary servitude under Section 1981. Under
a Section 1981 claim, discrimination is a key element. See 42 U.S.C.A. Â§ 1981; Gen. Bldg.
Contractors Ass'n v. Pennsylvania, 458 U.S. 375, 388-89, 102 S.Ct. 3141, 73 L.Ed.2d 835,
848-49 (1982). Without a purposeful showing of discrimination, Section 1981 cannot be
violated. Gen. Bldg. Contractors Ass'n, 458 U.S. at 388-91. 

 Since all claims regarding racial discrimination were abandoned by the Gilders, their
Section 1981 claims fail as a matter of law. The improper submission of issues constitutes
reversible error when harm is suffered. Bailey, 609 S.W.2d at 749-50; Wakefield, 704
S.W.2d at 348; see Tex. R. Civ. P. 434. As the Section 1981 action cannot be sustained
due to the abandonment of any allegation regarding discrimination, and all other claims
asserted by the Gilders have likewise been abandoned, the judgment of the trial court was
in error. It is not necessary to address Moore's other contentions. 


 The judgment is reversed, and judgment is hereby rendered in favor of Moore.




 Donald R. Ross

 Justice

 

Date Submitted: April 3, 2001

Date Decided: October 19, 2001


Do Not Publish

1. 
 [1]Jerry Moore did not actively participate in hotel operations during the relevant
events. References to Moore's acts refer to acts of Moore's agents.

2. In a motion for rehearing urged after we issued our original opinion in this case, the
Gilders complain in a footnote of our use of their first names only, suggesting that such
practice is a carryover from segregation times when "Black persons were customarily
addressed and referred to by their first names only . . . ." Where two or more individuals
in a given case have the same last name, it is the practice of the writing justice in this case
to initially refer to those individuals by their first and last names, and thereafter distinguish
between them by reference to their respective first names. See In re Marriage of Loftis,
40 S.W.3d 160 (Tex. App.-Texarkana 2001, no pet.); In re Walters, 39 S.W.3d 280 (Tex.
App.-Texarkana 2001, no pet.); In re Davis, 30 S.W.3d 609 (Tex. App-Texarkana 2000,
no pet.); In re Marriage of Parker, 20 S.W.3d 812 (Tex. App.-Texarkana 2000, no pet.);
In re Marriage of Morris, 12 S.W.3d 877 (Tex. App.-Texarkana 2000, no pet.); McLaurin
v. McLaurin, 968 S.W.2d 947 (Tex. App.-Texarkana 1998, no pet.). This method of
distinguishing between individuals who have the same last name is applied without regard
to the race or any other personal characteristic of the individuals involved and is not
intended to be disrespectful of any person. 

3. 
[3]Manager On Duty.
4. 42 U.S.C.A. Â§ 1981(a) (West 1994) states:


 All persons within the jurisdiction of the United States shall have the same
right in every State and Territory to make and enforce contracts, to sue, be
parties, give evidence, and to the full and equal benefit of all laws and
proceedings for the security of persons and property as is enjoyed by white
citizens, and shall be subject to like punishment, pains, penalties, taxes,
licenses, and exactions of every kind, and to no other.

5. 42 U.S.C.A. Â§ 1981 (West 1994) is based on the Thirteenth Amendment to the
United States Constitution, and it was originally enacted in the Civil Rights Act of 1866. 
Lewis v. Bethlehem Steel Corp., 440 F.Supp. 949, 964 (D. Md. 1977).

6. It should be noted that under a direct federal cause of action, involuntary servitude
has been defined. The term "involuntary servitude" necessarily means a condition of
servitude in which the victim is forced to work for the defendant by the use or threat of
physical restraint or physical injury, or by the use or threat of coercion through law or legal
process. United States v. Kozminski, 487 U.S. 931, 952, 108 S.Ct. 2751, 101 L.Ed.2d 788,
811 (1988). Although Kozminski involved a criminal charge of indentured servitude, the
Fifth Circuit has essentially extended the definition to civil cases. Channer v. Hall, 112
F.3d 214, 217 (5th Cir. 1997); see Watson v. Graves, 909 F.2d 1549 (5th Cir. 1990). In
civil actions involuntary servitude has been held to constitute an action by the master
causing the servant to have, or to believe he/she has, no way to avoid continued service
or confinement. When the employee has a choice, even though it is a painful one, there
is no involuntary servitude. A showing of compulsion is thus a prerequisite to proof of
involuntary servitude. Channer, 112 F.3d at 217-18 (citing Watson, 909 F.2d at 1552).

7. The purpose of 42 U.S.C.A. Â§ 1981 is to deal with claims of discrimination. See
generally David B. Sweet, J.D., Annotation, Supreme Court's Views as to Constitutionality,
Construction, and Application of 42 USCS Â§ 1981, Providing for Equal Rights as to such
Matters as Contracts and Legal Proceedings, 105 L.Ed.2d 737 (1991).

8. The prohibitions of Section 1981 encompass private as well as governmental
action. Gen. Bldg. Contractors Ass'n v. Pennsylvania, 458 U.S. 375, 387-88, 102 S.Ct.
3141, 73 L.Ed.2d 835, 848-49 (1982).