

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-10-00044-CR

BRANDON LEE DENSON                                    APPELLANT

V.

THE STATE OF TEXAS                                         STATE

----------

FROM COUNTY CRIMINAL COURT NO. 8 OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

## I. Introduction

In two points, Appellant Brandon Lee Denson challenges the legal and factual sufficiency of the evidence to support his conviction for driving while intoxicated (DWI). We affirm.

---

[1]*See* Tex. R. App. P. 47.4.

## II. Factual and Procedural Background

Judy Smith testified that it was still light out around 7:35 p.m. on July 14, 2007, as she and her sister were driving home on a residential road in Fort Worth. From her rear-view mirror, Smith saw a low-to-the-ground green-teal Pontiac Firebird coming "real fast" and knew it was going to hit her vehicle, a 2004 Ford Explorer. Smith reflected that she did not know why the driver, who she identified as Denson, could not have "just swerved to the left and missed [her] completely. There [were] two lanes of traffic he could have gone in and gone around [her]" because there was no oncoming traffic.

Smith heard the low-to-the-ground Pontiac Firebird's brakes squeal. It hit her vehicle, backed off and hit her vehicle again, and then "went completely under [her vehicle] and lifted [it] up and was basically driving [it]." The Firebird left 215 feet of skid marks and ended up in a nearby driveway or front yard.

The Firebird was totaled; "[t]he whole hood was off, the radiator was scrunched up. The air bag did not go off . . . and it was just crunched." Smith took photos of the wreck right after it happened, admitted as State's Exhibits 2, 3, 4, 5, 6, and 7.[2] State's Exhibit 7 shows the skid marks left by Denson's Firebird.

Smith exited her car and started to check on Denson before realizing that she needed to call 911 first; she went back to her car to retrieve her cell phone and dialed 911. While she was doing that, the homeowners of the yard where

---

[2]Smith's arm was hurt, requiring surgery. Smith was able to drive her vehicle to her nearby home for a tow truck to retrieve it.

2

Denson landed the Firebird came out to help him. Smith described Denson's appearance after the accident as glassy-eyed, and as she relayed the 911 operator's instructions to him, he appeared to have a hard time comprehending her questions. He had a head wound that was bleeding profusely. Police and an ambulance arrived a few minutes after the incident.

Fort Worth Police Officer C.M. Gilbert testified that he was dispatched to the accident around 7:30 p.m. He found a vehicle in a yard and another vehicle about 100 feet away. He described Denson as having bloodshot, watery eyes; slurred speech; slight disorientation; and a slight odor of alcoholic beverage, and he started to suspect that Denson might have been under the influence of something. He asked Denson if he had had anything to drink, and Denson said that he had consumed one beer earlier. Denson knew generally where he was and could say what day it was, but "that was about it." Denson told him that his accelerator had stuck.

The only field sobriety test that Officer Gilbert was able to perform on Denson was the horizontal gaze nystagmus (HGN) test because Denson was "backboarded" by MedStar to transport him to the hospital. He observed six clues before MedStar transported Denson to John Peter Smith hospital (JPS). Officer Gilbert stated that the HGN clues indicate that there is a possible presence of an alcoholic beverage or some other intoxicant.

Officer Gilbert followed the ambulance to the hospital, gave Denson his statutory warnings, and instructed the nurse to perform a DWI blood draw after

Denson consented. The blood draw, at 9:27 p.m., occurred two minutes after Denson consented and around two hours after the collision.

The State subpoenaed Denson's emergency room medical records from JPS, and the trial court admitted them. The hospital record states that Denson said his gas pedal was stuck, that he could not stop, that he rear-ended a parked car, and that he did not remember the accident. The toxicology report on his hospital urine sample collected at 1:16 a.m. on July 15, 2007, indicates that his urine was positive for benzodiazepine (Alprazolam) and cannabinoids (marihuana).

Dr. Angela Springfield, Tarrant County Medical Examiner's Office's chief toxicologist, testified that a therapeutic quantity of Alprazolam was found in Denson's blood. His blood was not tested for alcohol, and the hospital's cannabinoids finding was not confirmed by her lab.

Dr. Springfield testified that side effects of Alprazolam include sedation, dizziness, disorientation, confusion, or muscle relaxation, depending on the individual, and that alcohol would intensify the effect of Alprazolam. She stated that the presence of cannabinoids, combined with alcohol or Alprazolam, could impair the driver because they affect reaction times and judgment about speed and location of the lane. She opined that a person with these substances in his system would not have the normal use of his mental or physical faculties. And she indicated that there was "a very good chance" that a person with just Alprazolam in his blood would be an impaired driver.

4

Denson's mother, Tammy Denson, testified that she arrived at JPS around 8:15 p.m. and saw her son handcuffed to a gurney. Denson's vehicle had a "flood title," i.e., it had been previously flooded by water and was sold to Denson with that notification. Denson had owned the vehicle for three or four weeks prior to the accident. It had been "in the shop" for electrical work for around the same amount of time as Denson had owned it. Denson had mentioned to her about the accelerator's sticking, but it was going to cost several thousand dollars to fix, and they had not taken it to a mechanic to confirm whether there was a problem prior to the accident.

Denson pleaded not guilty to the State's charge alleging that he operated a motor vehicle in a public place while he was intoxicated by not having the normal use of his mental or physical faculties by reason of the introduction of alcohol, a controlled substance (Alprazolam), a drug, a dangerous drug, or a combination of two or more of these substances in his body. The trial court found Denson guilty and assessed punishment at a fine of $1,000 and 120 days' confinement in the Tarrant County Jail. The trial court then suspended the sentence and placed Denson on two years' community supervision. This appeal followed.

### III. Sufficiency of the Evidence

Although Denson challenges both the legal and factual sufficiency of the evidence to support his conviction, the court of criminal appeals has held that there is no meaningful distinction between the legal sufficiency standard and the factual sufficiency standard. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim.

App. 2010) (overruling *Clewis v. State*, 922 S.W.2d 126, 131–32 (Tex. Crim. App. 1996)).   Thus, the *Jackson* standard, which is explained below, is the "only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt."   *Id.*   Therefore, we overrule Denson's second point and address only his first, legal sufficiency, point.

In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).   The standard of review is the same for direct and circumstantial evidence cases; circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor.  *Clayton*, 235 S.W.3d at 778; *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

Before finding Denson guilty, the trial court made the following observations:

> As far as the admission of—and smell of alcohol, that sure is a factor in looking at alcohol, but your test presumptively concludes that there was no alcohol in his blood at the time of the test that was two hours later.  He could have had up to two ounces at that time, that had been metabolized completely by the time the test was taken.

> But I'm not even going to speculate as to alcohol, and I'm not going to speculate as to cannabinoid, but it's conclusive proof

6

beyond a reasonable doubt that he did have [A]lprazolam in his system. And it doesn't make any difference whether it had a half life or what the therapeutic dose was, our law in Texas doesn't make a difference.

Therefore, Mr. Denson, I find you guilty beyond a reasonable doubt of the introduction—of having the introduction of alcohol—or not alcohol—[A]lprazolam into your system and you weren't normal. The most conclusive proof of your abnormalness is your not being able to shut the car down or avoid the wreck. I think the wreck is the best example or the worst example of abnormality.

Denson specifically complains that "by limiting the ruling to the presence of [A]lprazolam and inability to avoid the accident," the trial court made its decision on incriminating circumstances that were not legally sufficient to prove that he was intoxicated and imposed "what is almost a 'per se' standard of intoxication for the presence of a controlled substance." And he argues that we may not consider all of the incriminating circumstances when the trial court expressly weighed only the presence of Alprazolam and the subsequent wreck. He also complains that Dr. Springfield's testimony—that a driver with only Alprazolam in his system would be an "impaired" driver—does not rise to the level of the statutory definition of intoxication.

A person commits DWI if he operates a motor vehicle in a public place while intoxicated. Tex. Penal Code Ann. § 49.04 (Vernon 2003). A person is intoxicated when he lacks the normal use of mental or physical faculties "by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, or any other substance

into the body." *Id.* § 49.01(2)(A) (Vernon 2003).[3]  The intoxicant itself is not an element of the offense.  *Gray v. State*, 152 S.W.3d 125, 132 (Tex. Crim. App. 2004).  Rather, the State must prove the element of intoxication.  *Harkins v. State*, 268 S.W.3d 740, 748 (Tex. App.—Fort Worth 2008, pet. ref'd).

Based on the evidence at trial, the trial court could have found that Denson was intoxicated beyond a reasonable doubt on the evidence that it specifically remarked upon at the hearing.  That is, the record reflects that Denson ingested at least a therapeutic level of Alprazolam, which the trial court could have reasonably found caused him to suffer impairment of his normal use of his physical or mental faculties based on Dr. Springfield's testimony about its common side effects:  sedation, dizziness, disorientation, confusion, or muscle relaxation.  Officer Gilbert's testimony about Denson's slurred speech and slight disorientation—notwithstanding the six clues from the HGN test, which could have resulted from concussion, and Denson's statement about consuming a beer—further supports the trial court's conclusion that Denson was not "normal" and that he was intoxicated by the ingestion of Alprazolam.  *See, e.g., Harkins*, 268 S.W.3d at 749–51 (holding the evidence legally sufficient of intoxication when officer testified that appellant's eyes were heavy, her pupils constricted, she was "very disoriented," her speech was thick, she slurred her words, she staggered and was very unsteady, she failed three standard field sobriety tests,

---

[3]The alternative is "intoxication per se," which requires "having an alcohol concentration of 0.08 or more."  Tex. Penal Code Ann. § 49.01(2)(B).

8

and expert witness testified about the side effects of the prescription drug found in appellant's blood: muscle relaxation, mild sedation, and slowing of responses); *Landers v. State*, 110 S.W.3d 617, 620–21 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd) (holding evidence sufficient to support felony DWI conviction when appellant admitted ingesting prescription medication and appeared sluggish, stumbled, had poor coordination, and slurred her words). The impairment of Denson's normal faculties then led to his *twice* hitting Smith's vehicle and skidding for 215 feet—destroying his own vehicle in the process— even though there were other, empty lanes that he could have moved into to avoid the collision.

And although Denson contends that "the presence of a controlled substance at a therapeutic level, coupled with an accident that has a reasonable explanation, is insufficient to prove intoxication," we disagree on these facts. Denson's mother testified that Denson had told her about his car's accelerator sticking, but she also stated that this had not been confirmed by a mechanic prior to the wreck. Denson told Officer Gilbert and hospital personnel that his accelerator had stuck, but he also told hospital personnel that he had rear-ended a parked car. The trial court was entitled to resolve conflicts in the testimony and to weigh the evidence; it was the sole judge of the weight and credibility of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (Vernon 1979); *Brown v. State*, 270 S.W.3d 564, 568 (Tex. Crim. App. 2008), *cert. denied*, 129 S. Ct. 2075 (2009). Because we cannot reevaluate and weigh the credibility of the evidence,

9

we hold that, viewing the evidence in the light most favorable to the verdict, Smith's version of events, when coupled with Dr. Springfield's testimony about the effects of Alprazolam and Officer Gilbert's testimony about Denson's demeanor, are legally sufficient to support the trial court's intoxication finding and Denson's DWI conviction. *See also Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Clayton*, 235 S.W.3d at 778. Therefore, we overrule Denson's sole point.

## IV. Conclusion

Having overruled Denson's sole point, we affirm the trial court's judgment.


           BOB MCCOY
           JUSTICE

PANEL: GARDNER, WALKER, and MCCOY, JJ.

GARDNER, J. filed a concurring opinion.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: March 24, 2011



# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

---

### NO. 02-10-00044-CR

---

BRANDON LEE DENSON                                                    APPELLANT

V.

THE STATE OF TEXAS                                                         STATE

----------

FROM COUNTY CRIMINAL COURT NO. 8 OF TARRANT COUNTY

----------

## CONCURRING MEMORANDUM OPINION[4]

----------

I agree with the majority but write separately to more specifically address Appellant's argument that we should disregard certain evidence admitted at trial because the trial court allegedly assigned that evidence no weight when finding Appellant guilty. Contrary to Appellant's argument, reviewing courts conducting a sufficiency review consider *all of the evidence* in the light most favorable to the

---

[4]*See* Tex. R. App. P. 47.4.

prosecution to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *see also Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (holding that the *Jackson* standard is the "only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt").

In addressing Appellant's claim, I am mindful that a reviewing court may not re-evaluate the weight and credibility of the evidence and substitute its judgment for that of the factfinder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). Instead, the reviewing court defers to "'the responsibility of the trier of fact to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (quoting *Jackson*, 443 U.S. at 318–19, 99 S. Ct. at 2781). The reviewing court then determines "whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Id.* at 16–17.

Here, Appellant maintains that, in finding him guilty of DWI, the trial court "limited his ruling" to the presence of Alprazolam in his system and the circumstances surrounding the accident and that, therefore, the court "expressly disregarded" all of the other evidence. Appellant contends, therefore, that we

3

cannot consider all of the evidence admitted at trial because doing so would be tantamount to re-evaluating the weight and credibility of the evidence and substituting our judgment for the factfinder's.[5]  Appellant's argument is misplaced.

Contrary to Appellant's assertion, the trial court did not state it was excluding or wholly disregarding certain evidence in determining Appellant's guilt. Instead, the trial court merely remarked that it was not going to "speculate" as to the presence of alcohol or cannabinoid in Appellant's system because the evidence was "conclusive" that his system contained Alprazolam.  The trial court further stated that "the most conclusive proof" of Appellant's loss of the normal use of his mental and physical faculties was his "not being able to shut the car down or avoid the wreck."  The trial court's remarks indicate that it was exercising its responsibility to assess and weigh the evidence.  The remarks also demonstrate that the trial court considered the issue of alcohol:

> As far as the admission of—and smell of alcohol, that sure is a factor in looking at alcohol, but your test presumptively concludes that there was no alcohol in his blood at the time of the test that was two hours later.  He could have had up to two ounces at that time,

---

[5]In support of his argument, Appellant cites to well-established legal principles.  *See Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999) (holding that the reviewing court may not re-evaluate the weight and credibility of the evidence and substitute its judgment for that of the factfinder), *cert. denied*, 529 U.S. 1131 (2000); *Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993) (holding that in circumstantial evidence cases, "it is not necessary that every fact point directly and independently to the defendant's guilt; it is enough if the conclusion is warranted by the combined and cumulative force of all the incriminating circumstances"), *cert. denied*, 511 U.S. 1046 (1994).

that had been metabolized completely by the time the test was taken.

The court's statement that it was not going to speculate regarding the alcohol and cannabinoids in Appellant's system simply indicates that it did not feel the need to assign an exact weight to those factors because of the great weight he was giving to the Alprazolam in Appellant's system and the circumstances of the offense in finding Appellant guilty. The trial court's remarks indicate that he considered all the evidence before issuing his ruling.

We are guided by the evidence in the record, and the trial court's remarks in this instance do not limit the evidence we can consider in reviewing the sufficiency of the evidence. Indeed, Appellant cites no authority to support his contention that we would be improperly re-evaluating the weight and credibility of the evidence by considering all the evidence presented to the trier of fact in this case. *See Dewberry*, 4 S.W.3d at 740 (holding that a reviewing court must "evaluate all of the evidence in the record, both direct and circumstantial, whether admissible or inadmissible"). *Cf. Whitehead v. State*, 130 S.W.3d 866, 872 (Tex. Crim. App. 2004) ("[A]n appellate court's review of the record itself is generally limited to the evidence before the trial court at the time of the trial court's ruling.").

Thus, I would hold that, viewed in the light most favorable to the verdict, a rational factfinder could have found Appellant guilty of DWI beyond a reasonable doubt because (1) he was driving on a residential street at a very high rate of speed; (2) he hit Smith's vehicle twice from behind, leaving 215 feet of

skidmarks; (3) at the time of the accident, he had a slight odor of an alcoholic beverage and had glassy eyes, slow and slurred speech, and difficulty comprehending what was happening; (4) he admitted to drinking a beer earlier; (5) the HGN test performed on Appellant revealed six clues of intoxication; (6) blood drawn at the hospital two hours after the offense revealed the presence of Alprazolam; (7) a urinalysis at the hospital showed the presence of the same drug as well as cannabinoids; and (8) although the toxicologist testified merely that there was a good chance that Alprazolam, alone or in the presence of either cannabinoids or alcohol "could" impair a driver, she further testified that the presence of all three substances "would" impair a driver such that he would not have the normal use of his mental or physical faculties.

ANNE GARDNER
JUSTICE

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: March 24, 2011

6