[COMMENT1] 

 

 

 

 

 

                                      COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-06-412-CR

 

 

PATRICIA LOUISE HARKINS                                                  APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

       FROM COUNTY CRIMINAL COURT NO. 10 OF TARRANT COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------

                                           I. Introduction

In four points, Appellant
Patricia Louise Harkins appeals her conviction for misdemeanor driving while
intoxicated (DWI).  We affirm.

                              II. Factual and Procedural History








On March 25, 2006, a
concerned citizen called 911 to report Harkins=s erratic driving.  Officer
Kenneth Klein responded, administered several field sobriety tests to Harkins,
and ultimately arrested her for DWI.  On
the night of her arrest, two chemical substancesCcarisoprodol, the generic name for the prescription drug Soma, and
meprobamate, a metabolized byproduct of carisoprodolCwere found in her blood.  The
fact issue at trial was whether Harkins was intoxicated by Soma or whether she
was impaired by physical ailments including chronic pain, nerve damage, and
drowsiness caused by sleep apnea.

Following a two-day trial,
the jury deliberated for over five hours before finding Harkins guilty of DWI.  After hearing argument on punishment, the
trial court sentenced Harkins to a $750 fine, court costs, and 150 days in jail
probated for two years.[1]  This appeal followed.

                                           III. Discussion








In her combined first and
second points, Harkins broadly complains that the evidence was legally and
factually insufficient to support the jury=s verdict.  In her argument
under these points, and also under her combined third and fourth points, she
complains that the trial court failed to charge the jury with the complete,
statutory definition of Adangerous
drug,@ that the State presented no evidence to prove under the complete
definition that the substances found in Harkins=s blood on the night of her arrest were dangerous drugs, and that the
failure to present the complete definition destroyed her right to present a
defense.[2]  She also complains, in her fourth point and
in part of her third point, that the trial court made an improper comment on
the weight of the evidence and that this also had the effect of destroying her
right to present a defense.

A. Jury Instructions

1.  Standard of Review








Appellate review of error in
a jury charge involves a two-step process. 
Abdnor v. State, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994).  Initially, we must determine whether error
occurred.  If so, we must then evaluate
whether sufficient harm resulted from the error to require reversal.  Id. at 731_32.

2. ADangerous Drug@ Instruction

The trial court=s charge to the jury must set forth the Alaw applicable to the case.@  Tex. Code Crim. Proc. Ann. art. 36.14 (Vernon 2007).  Thus, the trial court must instruct the jury
on each element of the offense charged and each statutory definition that
affects the meaning of an element of the offense.  McIlroy v. State, 188 S.W.3d 789, 797
(Tex. App.CFort Worth
2006, no pet.); Murphy v. State, 44 S.W.3d 656, 661 (Tex. App.CAustin 2001, no pet.).  If a
phrase, term, or word that the jury must use to properly resolve the issues is
statutorily defined, the trial court must submit the statutory definition to the
jury.  Arline v. State, 721 S.W.2d
348, 352 n.4 (Tex. Crim. App. 1986); Nguyen v. State, 811 S.W.2d 165,
167 (Tex. App.CHouston [1st
Dist.] 1991, pet. ref=d). 

The health and safety code
defines Adangerous drug@ as follows:

(2)  ADangerous drug@
means a device or a drug that is unsafe for self-medication and that is not
included in Schedules I through V or Penalty Groups 1 through 4 of Chapter 481
(Texas Controlled Substances Act).  The
term includes a device or a drug that bears or is required to bear the legend:








(A)  ACaution: federal law
prohibits dispensing without a prescription@ or ARx
only@ or
another legend that complies with federal law . . . .

 

Tex. Health & Safety
Code Ann. ' 483.001(2) (Vernon Supp. 2008). 
The jury charge, however, omitted the language Aand that is not included in Schedules I through V or Penalty Groups 1
through 4 of Chapter 481 (Texas Controlled Substances Act)@ and the referenced schedules and penalty groups.  Harkins concedes that she failed to object to
this omission. 

3. Harm Analysis

Unobjected-to charge error
will not result in reversal of a conviction in the absence of egregious
harm.  Allen v. State, 253 S.W.3d
260, 264 (Tex. Crim. App. 2008); Almanza v. State, 686 S.W.2d 157, 171
(Tex. Crim. App. 1985) (op. on reh=g); see Tex. Code Crim.
Proc. Ann. art. 36.19 (Vernon 2006). 
Assuming without deciding that it was error for the trial court to
define dangerous drug without reference to the schedules and penalty groups, we
nevertheless conclude that Harkins was not harmed.   








Egregious harm is a difficult
standard to prove and must be determined on a case by case basis.  Ellison v. State, 86 S.W.3d 226, 227
(Tex. Crim. App. 2002).  In examining the
record for egregious harm, we must consider (1) the entire jury charge, (2) the
state of the evidence, including the contested issues and the weight of the
probative evidence, (3) the final arguments of the parties, and (4) any other
relevant information revealed by the record of the trial as a whole.  Allen, 253 S.W.3d at 264 ; Olivas
v. State, 202 S.W.3d 137, 144 (Tex. Crim. App. 2006).  The purpose of this review is to illuminate
the actual, not just theoretical, harm to the accused.  Almanza, 686 S.W.2d at 174.  Jury charge error is egregiously harmful if
it affects the very basis of the case, deprives the defendant of a valuable
right, or vitally affects a defensive theory. 
Allen, 253 S.W.3d at 264; Stuhler v. State, 218 S.W.3d
706, 719 (Tex. Crim. App. 2007).








We turn first to the
evidence.  Harkins admitted that she took
the medication Soma, and it was undisputed that two chemical substancesCcarisoprodol, the generic name for Soma, and meprobamate, a
metabolized byproduct of carisoprodolCwere found in her blood on the night of her arrest.  Harkins concedes that carisoprodol is not
included in the schedules or penalty groups in the Texas Controlled Substances
Act.  See Tex. Health & Safety Code Ann. '' 481.032, 481.102B.105 (Vernon 2003 & Supp. 2008). 
Therefore, if the jury found carisoprodol to fall within the rest of the
definition of dangerous drug, the substance was clearly a dangerous drug.[3]  Thus, with regard to carisoprodol, Harkins
could not have been harmed by the omission from the definition of dangerous
drug.[4]


In general, the closing
arguments focused on the question of whether Harkins=s medication, as opposed to her medical conditions, caused her erratic
driving.  While Harkins=s attorney stated in passing that the jury would have to determine
whether the substance was a dangerous drug, counsel used the majority of the
closing argument to argue that Harkins was not intoxicated because she had only
therapeutic amounts of the drug in her system and that her erratic driving was
caused by sleep apnea or nerve damage.[5]









The State=s argument followed a similar pattern. 
While it briefly directed the jury to the charge=s definition of dangerous drug,[6]
the State primarily argued that carisoprodol could cause a loss of mental and
physical faculties and drowsiness and that the Aobvious explanation@ for Harkins=s poor
driving was the drug. 

Further, the jury charge
properly defined Aintoxicated@ as Anot having
the normal use of one=s mental or
physical faculties by reason of the introduction of a dangerous drug into the
body@ and instructed the jury that it could not convict Harkins @unless each element of the offense is proved beyond a reasonable
doubt.@  See Tex. Penal Code Ann. ' 49.01(2)(A) (Vernon 2003). Again, the more contested issue was
whether Harkins was intoxicated by the substances in her blood, not whether
those substances were dangerous drugs. 








We note, finally, that
although Harkins did present expert testimony that carisoprodol was not a
dangerous drug, she did not argue it was not a dangerous drug because it was in
fact included in the penalty groups or schedules of the Texas Controlled
Substances Act.  Rather, Harkins=s doctor testified that carisoprodol was not a dangerous drug because
it was not a Adrug that
could kill you@ or cause
permanent physical or psychological harm. 
Thus, the presence or absence of carisoprodol on the penalty groups and
schedules was Anot a
contested issue at all.@  See Kucha v. State, 686 S.W.2d 154,
156 (Tex. Crim. App. 1985) (holding that one of the considerations in
determining egregious harm is whether the error related to a contested issue); accord
Hutch v. State, 922 S.W.2d 166, 171B72 (Tex. Crim. App. 1996).

After carefully considering
the entire jury charge, the evidence, the arguments of counsel, and other
relevant information, we hold that the error, if any, in the charge=s definition of dangerous drug did not deny Harkins a Afair and impartial trial@ or Aaffect the
very basis of the case, deprive the defendant of a valuable right, or vitally
affect a defensive theory.@  See Hutch, 922 S.W.2d
at 171B72.  Accordingly, we hold that
Harkins did not suffer egregious harm. 
We overrule this portion of Harkins=s first and second points.

4. Judicial Comment








In her third and fourth
points, Harkins contends that Paragraph IV of the jury charge was an improper
comment on the weight of the evidence that diminished the State=s burden of proof.  Paragraph IV
states, AYou are instructed that the fact that the defendant is or has been
entitled to use the dangerous drug is not a defense to this offense.@[7] [Emphasis added.]

The trial court must refrain
from making any remark calculated to convey to the jury its opinion of the
evidence in a particular case.  Tex. Code Crim. Proc. Ann. art. 38.05
(Vernon 1979).  A charge that assumes the
truth of a controverted issue is a comment on the weight of the evidence and is
erroneous.   Whaley v. State, 717
S.W.2d 26, 32 (Tex. Crim. App. 1986); Hess v. State, 224 S.W.3d 511, 514
(Tex. App.CFort Worth
2007, pet. ref=d).   








Appellant was charged with
misdemeanor DWI.  A person commits this
offense if she is intoxicated while operating a motor vehicle in a public
place.  Tex.
Penal Code Ann. ' 49.04(a).  Section 49.01 defines Aintoxicated@ as Anot having the normal use of mental or physical faculties by reason of
the introduction of alcohol, a controlled substance, a drug, a dangerous
drug, a combination of two or more of those substances, or any other substance
into the body[.]@  Id. ' 49.01(2)(A) (emphasis added). 
Here, the jury charge only defined Aintoxicated@ with
reference to Athe
introduction of a dangerous drug into the body.@  Therefore, one of the fact
issues for the jury was whether Appellant had taken a dangerous drug.

Section 49.10 of the penal
code provides that

In a
prosecution under Section 49.03 [repealed], 49.04 [Driving While Intoxicated],
49.045 [Driving While Intoxicated with Child Passenger], 49.05 [Flying While
Intoxicated], 49.06 [Boating While Intoxicated], 49.065 [Assembling or
Operating an Amusement Ride While Intoxicated], 49.07 [Intoxication Assault],
or 49.08 [Intoxication Manslaughter], the fact that the defendant is or has
been entitled to use the alcohol, controlled substance, drug, dangerous
drug, or other substance is not a defense.

 

Id. ' 49.10 (emphasis added).


 

Although the language used in
Paragraph IV tracks section 49.10, that language is taken out of context
because section 49.10 must be read with section 49.01CAthe dangerous drug@ referred to in section 49.10 requires a finding by the jury under
section 49.01 that Appellant had taken Aa dangerous drug.@  As used by the trial court in
its instruction in Paragraph IV, Athe@ dangerous
drug became an improper comment on the weight of the evidence. 








Appellant objected at trial
to Paragraph IV in its entirety.  Outside
the presence of the jury, the trial court, defense counsel, and the State
discussed the charge:

[Trial Court]:       Okay. 
So we are just going to proceed on dangerous drug.

 

[Defense]:           And we have
no objection to the charge.

. . . .

[State]:              We do, Your Honor.  Under section 49.10, we would like a no
defense to be included in the court=s charge.

 

. . . .

 

[Trial Court]:       . . . I=ll put that in there.

 

[Defense]:           Judge, we are going to object.  That doesn=t apply to this scenario,
Judge.  That has something to do with
something totally different.  This hasCthe
language in there is not prescription drugs. 
It says the fact the defendant has or been entitled to useC.

 

[Trial Court]:       A dangerous drug is not a defense.

 

[Defense]:           It=s absolutely a defense.  Tell the jury that they can=t
consider that is going to just basically take the defense away fromC

 

[Trial Court]:       But it says it=s not
a defense in a prosecution forC

 

[Defense]:           But it doesn=t sayC

 








[Trial Court]:       It says, AIn a
prosecution under 49.04, the fact that the defendant is or has been entitled to
use the dangerous drug is not a defense.@

 

[Defense]:           Note our objection, Judge.  

 

[Trial Court]:       How do you say that it says anything else?

 

[Defense]:           That the evidence in this case is the
fact thatCthat,
first of all, there wasn=t a
dangerous drug, according to our expert. . . . Their expert said they didn=t
know if it was a controlled substance or dangerous drug.  Then they found somebody that said it was a
dangerous drug.  Okay.  So we got that one. . . . But we have a
prescription here for the substance that was found in our client=s
body. . . . Now, to tell the jury they can=t use that as a defense, the
fact that she had normal amounts in her system, . . . . You=re
basically telling the jury they can=t consider that.  That=s not what the law intended
by this.

 

. . . .

[Trial Court]:       . . . that it=s not
a defense to intoxication.  If the jury
wants to say, look, she=s
intoxicated by this dangerous drug, but she has a prescription, well, that=s not
a defense to it.  That=s all
that=s
saying. . . . 

 

[Defense]:           Note our objections, Judge.

 

[Trial Court]:       Overrule your objection.  I=ll grant [the State=s]
instruction in 49.10 and it will say . . . AIn a prosecution for driving
while intoxicated the fact that the defendant is or has been entitled to use
the dangerous drug is not a defense.@

 








When the jury returned and the trial court
requested objections on the charge, defense counsel merely stated, AWe object to Paragraph IV.@

To preserve error with regard
to a jury charge, objections must be sufficiently specific to point out the
errors complained of.  Chapman v.
State, 921 S.W.2d 694, 695 (Tex. Crim. App. 1996); see also Tex. Code Crim. Proc. Ann. art. 36.14 (ABefore said charge is read to the jury, the defendant or his counsel
shall have a reasonable time to examine the same and he shall present his
objections thereto in writing, distinctly specifying each ground of
objection.@ (emphasis
added)). To constitute a valid objection to jury instructions, the objection
must be specific and clear enough to apprise the trial court of the nature of
the objectionCthis
specificity requirement is to enable the trial court Ato know in what respect the defendant regards the charge as defective
and to afford him an opportunity to correct it before reading the charge to the
jury.@  Pennington v. State,
697 S.W.2d 387, 390 (Tex. Crim. App. 1985). 









Because Harkins never
apprised the trial court of her complaint with regard to the article
distinction, i.e., the use of Aa@ rather than
Athe,@ but rather,
complained broadly with regard to Paragraph IV in its entirety and its presence
in the charge at all, we review her complaint under the standard for
unobjected-to error.  See id. (AIt is clear then that a general objection which does not distinctly
specify the claimed error in the charge is not sufficient to preserve error.@); see also Almanza, 686 S.W.2d at 171 (setting out the Aegregious harm@ standard). 

The jury charge set out the
correct elements of DWI and properly defined Aintoxicated@; it
partially defined Adangerous
drug,@ as previously discussed above. 
The application portion of the jury charge set out

Now, if you find from the evidence beyond a
reasonable doubt that in Tarrant County, Texas, on or about the 25th day of
March, 2006, [Harkins] did then and there operate a motor vehicle in a public
place while [she] was intoxicated by not having the normal use of her mental or
physical faculties by reason of the introduction of a dangerous drug into her
body, then you will find [Harkins] guilty as charged.

 

Unless you do so find beyond a reasonable doubt
or if you have a reasonable doubt thereof, you will acquit [Harkins] and say by
your verdict, Anot
guilty@.

 

The Ano defense@
instruction, with its improper emphasis, and then the remaining standard jury
instructions followed.  The trial court
read the charge to the jury, and then the parties presented their closing
arguments.  The State argued, as its only
mention of the words Adangerous
drug,@ 

We know that
Soma, which the Defendant admitted to taking[,] is a dangerous drug.  All the witnesses testified that you have to
have a prescription to get these drugs. 
Looking at the Court=s definition, the legal definition of a dangerous drug, it qualifies
as a dangerous drug.  Though their expert
said it wasn=t a
dangerous drug, that=s the
medical definition.  In the State of
Texas in this Court, it=s a
dangerous drug.








The State contended in the rest of its argument
that Harkins had been intoxicated by the Soma (carisoprodol) that she had
admitted consuming. Harkins also addressed the Adangerous drug@ issue,
stating

And as far as this dangerous drug goes, that=s for
y=all
to decide.  You know, their chief
toxicologist got on that witness stand, Angela Springfield, she couldn=t
tell you that it was a dangerous drug, could she?  She=s got all these degrees . . .
.  And she couldn=t
tell you it=s not
a dangerous drug.  If you find it=s not
a dangerous, State didn=t
meet their burden. 

 

. . .
.

 

She was not intoxicated
because of carisoprodol.  And in the
Court=s Charge it tells you in Paragraph IV, that you are instructed the
fact the Defendant has been entitled to use a dangerous drug is not a
defense.  All that means is the fact that
she had a prescription for this drug in and of itself does not entitle
her.  In other words, she can=t come to court and say, I had a prescription[,] I=m not guilty.  But their own
expert along with our expert both told you she had normal amounts of that in
her system.  She wasn=t intoxicated, folks.  The
erratic drive was caused by something else. 









Upon review of the record set
out in detail in this opinion, we conclude that the instruction, albeit
improper in the manner given, was not egregiously harmful to Appellant in light
of the entire jury charge, the state of the evidence, the parties= final arguments, and the other relevant information revealed by the
record of the trial as a whole.  See
Allen, 253 S.W.3d at 264; see also Nelson, 149 S.W.3d at 211
(interpreting section 49.10 of the penal code, the Ano defense@ provision,
to include the voluntary taking of prescription drugs).  We overrule Harkins=s third and fourth points.

B. Legal and Factual Sufficiency  

Finally, Harkins argues that
the evidence was legally and factually insufficient to prove the element of
intoxication.  

1. Standard of Review

In reviewing the legal
sufficiency of the evidence to support a conviction, we view all the evidence
in the light most favorable to the prosecution in order to determine whether
any rational trier of fact could have found the essential elements of the crime
beyond a reasonable doubt.  Jackson v.
Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Clayton v.
State, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).








When reviewing the factual
sufficiency of the evidence to support a conviction, we view all the evidence
in a neutral light, favoring neither party. 
Watson v. State, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006); Drichas
v. State, 175 S.W.3d 795, 799 (Tex. Crim. App. 2005).  We then ask whether the evidence supporting
the conviction, although legally sufficient, is nevertheless so weak that the
fact-finder=s
determination is clearly wrong and manifestly unjust or whether conflicting
evidence so greatly outweighs the evidence supporting the conviction that the
fact-finder=s
determination is manifestly unjust.  Watson,
204 S.W.3d at 414_15, 417; Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App.
2000).  To reverse under the second
ground, we must determine, with some objective basis in the record, that the
great weight and preponderance of all the evidence, though legally sufficient,
contradicts the verdict.  Watson,
204 S.W.3d at 417.

2. Analysis

A person commits the offense
of DWI if the person is intoxicated while operating a motor vehicle in a public
place.  Tex.
Penal Code Ann. '
49.04(a).  As previously defined, Aintoxicated@ under the
penal code involves not having the normal use of one=s mental or physical faculties by reason of the introduction of
alcohol, a controlled substance, a drug, a dangerous drug, a combination of two
or more of those substances, or any other substance into the body.  Id. ' 49.01(2)(A).  This
multipart definition sets forth alternate means by which the State may prove
the element of intoxication, but the substance that causes intoxication is not
itself an element of the offense of DWI. 
See Gray v. State, 152 S.W.3d 125, 132 (Tex. Crim. App.
2004); Bagheri v. State, 119 S.W.3d 755, 762 (Tex. Crim. App. 2003).

The evidence at trial showed as follows:








On the evening of March 25,
2006, Tony Simmons and his passenger observed Harkins=s vehicle veer to the right, hit the curb, and reenter the lane three
times, and they called 911 to report the erratic driving.  Simmons also saw Harkins=s vehicle stop in the left-turn lane for a few minutes without turning;
Harkins eventually pulled back onto the main road and continued driving.  Harkins also narrowly avoided an accident and
pulled into a driveway where she parked for two or three minutes before backing
out and continuing on. 

Officer Klein identified
Harkins=s vehicle based on Simmons=s description. When he approached the vehicle, Officer Klein noticed
that Harkins=s eyes were
heavy, her pupils were constricted, she was Avery disoriented,@ her speech was thick, her words sounded slurred, and she had a hard
time finding her driver=s license
and proof of insurance.  Harkins told
Officer Klein that she had been to dinner and was tired.  When asked to get out of her vehicle, Harkins
took sixty to ninety seconds to locate her shoes, and she almost fell.  Once out of the vehicle, Harkins staggered
and was Avery unsteady.@ 








Officer Klein, however, did
not smell alcohol on Harkins.  Harkins
told Officer Klein that she had taken the medication Soma at dinner and that
she suffered from several ailments including degenerative disk disease and
nerve damage in her foot.  Officer Klein
administered the horizontal gaze nystagmus test but failed to detect any signs
of intoxication.  Officer Klein then
administered the walk-and-turn test, and he testified that Harkins could not
maintain her balance, did not walk a straight line, failed to take heel-to-toe
steps, and took an incorrect number of steps. 
Officer Klein next administered the one-leg-stand test, but Harkins
could not complete the test because she lowered her foot immediately and had
great difficulty balancing.   

Concerned that Harkins=s medical condition might have affected her performance on the other
tests, another responding officer, Officer Hash, administered the Aless physical@ Romberg
balance test.[8]  This test required Harkins to stand with her
arms to her side, look up at the sky, and estimate thirty seconds.  Officer Klein testified that Harkins Aalmost fell over,@ estimated thirty-five seconds to be thirty seconds, and swayed in
several directions.  Officer Hash
concluded that Harkins failed the test.[9]


After Harkins performed these
three tests, Officer Klein formed the opinion that she was intoxicated and
arrested her.  Harkins consented to a blood
draw. 








Officer Klein conceded that
Harkins was very cooperative, was visibly nervous and shaking, and maintained
that she was merely tired and not intoxicated. 
Officer Klein had only made one previous DWI arrest in his career, and
he admitted that his training in field sobriety tests was designed to detect
impairment from alcohol rather than prescription medicine.  He had, however, eight months of experience
in intake where he observed approximately twenty intoxicated individuals per
night, some intoxicated by drugs and some by alcohol. 

The parties also presented
expert testimony.  The experts agreed
that carisoprodol is the generic name for Soma; that meprobamate is a
metabolized byproduct of carisoprodol; and that the amounts of the substances
in Harkins=s blood were
within a Atherapeutic
level.@

The State=s first expert, Susan Howe, holds a Ph.D. in toxicology and is a
senior toxicologist at the medical examiner=s office.  Dr. Howe analyzed
Harkins=s blood and found the drugs carisoprodol and meprobamate.  








Another of the State=s experts was Angela Springfield, the chief toxicologist at the
medical examiner=s office,
who holds a Ph.D. in pharmacology and toxicology.  Dr. Springfield testified that carisoprodol
is a prescription drug that causes muscle relaxation and, as side effects, mild
sedation and slowing of responses. 
Further, carisoprodol could affect response time, hand-eye coordination,
balance, and alertness.  Dr. Springfield
agreed that the drug could have a Aserious impact on one=s mental and physical faculties,@ but she did not know whether carisoprodol was a dangerous drug or a
controlled substance.  She added that it
was Acertainly a prescription item.@

The State=s third expert, Michelle O=Neal, a forensic chemist, testified that carisoprodol is a Adangerous drug.@  She also stated that carisoprodol makes
people Agroggy@ and sleepy.[10]


Harkins=s doctor, Gregory Skie, was the sole defense witness.  Dr. Skie specialized in pain management and
had treated Harkins for two years for chronic pain in her back and right
leg.  Dr. Skie testified that Harkins
simply could not perform the field sobriety tests because of her preexisting
physical condition.  Dr. Skie disagreed
that carisoprodol is a dangerous drug, although he conceded that he did not
know the legal definition of that term.[11]  He maintained that neither Harkins=s medications nor her physical impairment would cause a problem
driving.  








On cross-examination, the
State confronted Dr. Skie with Aa document from the National Highway Traffic Safety Administration.@  Although the document was not
admitted into evidence, the prosecutor read a statement, apparently from the
document: ADrug
manufacturers of Soma suggest patients should be warned that carisoprodol may
impair the mental and/or physical abilities required for the performance of
potentially hazardous tasks such as driving a motor vehicle[.]@  Dr. Skie maintained that he
did not generally think Soma caused driving impairment, but Afor an individual patient in certain circumstances it could be a
factor and I want them to be aware . . . so that they would not take it during
times they might be tired or have other illnesses.@ 

Harkins also offered her
medical records from Dr. Margaret Mike, dated several months after her DWI
arrest.  Dr. Mike diagnosed and treated
Harkins for sleep apnea, a disorder that interferes with breathing during sleep
and causes an individual to wake up numerous times throughout the night.  Dr. Mike=s records indicated that she Asuspect[ed] [Harkins=s DWI arrest] was due to sleepiness,@ and she instructed Harkins to avoid driving when drowsy.  








In the information, the State
alleged that Harkins was intoxicated Aby not having the normal use of [her] mental or physical faculties by
reason of the introduction of a controlled substance, a dangerous drug, or a
combination of two or more of these substances into [her] body.@  At the charge conference,
however, the trial court ruled that the State had not presented any evidence of
a controlled substance and, therefore, instructed the jury that Harkins could
be found guilty only if the evidence showed intoxication by use of a dangerous
drug. 

Harkins admitted to ingesting
the prescription medication Soma, and carisoprodol was found in Harkins=s blood shortly after her arrest. 
O=Neal testified that carisoprodol was a dangerous drug.[12]  Dr. Springfield testified that carisoprodol
could affect response time, hand-eye coordination, balance, and alertness, and
the jury heard testimony describing (and watched the video of) Harkins=s slow verbal responses and performance on the field sobriety
tests.  Officer Klein testified, based on
his training and experience, and with knowledge of Harkins=s medical condition, that he believed she was intoxicated. 








Harkins presented evidence
and argument that her poor performance on the field sobriety tests was due to
her preexisting physical impairments or drowsiness caused by sleep apnea.  However, the jury could have weighed the
evidence, considered Harkins=s defense, and concluded the defense was not persuasive.  See Burkett v. State, 179 S.W.3d 18,
26B27 (Tex. App.CSan Antonio
2005, no pet.) (holding that evidence was sufficient to support DWI conviction
despite appellant=s defense of
disability); Landers v. State, 110 S.W.3d 617, 620B21 (Tex. App.CHouston
[14th Dist.] 2003, pet. ref=d) (holding evidence sufficient to support appellant=s felony DWI conviction where appellant admitted ingesting
prescription medication and appeared sluggish, stumbled, had poor coordination,
and slurred her words); Fogle v. State, 988 S.W.2d 891, 894 (Tex. App.CFort Worth 1999, pet. ref=d) (holding evidence was sufficient to support jury=s finding that appellant was intoxicated rather than merely suffering
from brain disorder).

Applying the appropriate
standards of review, we hold that the evidence is legally and factually sufficient
to prove beyond a reasonable doubt that Harkins was intoxicated by not having
the normal use of her mental and physical faculties by reason of the
introduction of the dangerous drug carisoprodol into her body.  See Clayton, 235 S.W.3d at 778; Watson,
204 S.W.3d at 414_15, 417.  We overrule the
remainder of Harkins=s first and
second points.

IV. Conclusion

Having overruled all of
Harkins=s points, we affirm the trial court=s judgment.

 

 

BOB MCCOY

JUSTICE

 








PANEL:  CAYCE, C.J.; DAUPHINOT and MCCOY, JJ.

 

CAYCE,
C.J. filed a concurring opinion.

 

PUBLISH    

 

DELIVERED:
August 29, 2008











 
 
 
 
 
 
 




 

 

 

 

 

 

                                      COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-06-412-CR

 

 

PATRICIA LOUISE HARKINS                                                  APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

       FROM
COUNTY CRIMINAL COURT NO. 10 OF TARRANT COUNTY

 

                                              ------------

 

                                  CONCURRING
OPINION

 

                                              ------------








I concur in the majority
opinion and write only to note my disagreement with the majority=s holding that the trial court committed error by instructing the jury
with language that tracks section 49.10 of the Texas Penal Code.  The Texas Court of Criminal Appeals has held
that language in a jury charge that follows the law as it is set out by the
Texas Legislature shall not be deemed error on the part of the trial court.[1] 
Because we are bound by the decisions of the court of criminal appeals,[2] I would hold that the trial court did not
err by submitting an instruction on section 49.10 that tracks the language of
the statute.  I agree with the majority
in all other respects.

 

 

 

JOHN CAYCE

CHIEF JUSTICE

 

DELIVERED:  August 29, 2008

 











[1]The
trial court also ordered Harkins to complete the DWI Education Program, the
Substance Abuse Evaluation, and any required counseling; to attend the Victim
Impact Panel; and to abide by other conditions of probation.





[2]Harkins
also contends that the information failed to set forth which specific
controlled substance or dangerous drug allegedly rendered her intoxicated or
that the substance alleged to be a dangerous drug bore the legend ACaution:
federal law prohibits dispensing without a prescription.@  To the extent Harkins twice argues, in a
single sentence without citation to authority under points one and two and
again under points three and four, that the jury charge also failed to set
forth the specific controlled substance or dangerous drug, her argument is
inadequately briefed, and we decline to address it.  See TEX. R. APP. P.
38.1(h); Tong v. State, 25 S.W.3d 707, 710 (Tex. Crim. App. 2000), cert.
denied, 532 U.S. 1053 (2001); Mosley v. State, 983 S.W.2d 249, 256
(Tex. Crim. App. 1998) (op. on reh=g), cert. denied, 526
U.S. 1070 (1999).  And a defendant must
raise an objection to the form or substance of a charging instrument before the
date on which trial commences or she waives the complaint.  TEX. CODE CRIM. PROC. ANN. art.
1.14(b) (Vernon 2005); Teal v. State, 230 S.W.3d 172, 177, 179 (Tex.
Crim. App. 2007); Fisher v. State, 887 S.W.2d 49, 54 (Tex. Crim. App.
1994), overruled on other grounds by Malik v. State, 953 S.W.2d 234
(Tex. Crim. App. 1997).  The record does
not reflect that Harkins objected to the information before the trial
began.  Therefore, Harkins failed to
preserve this error.  See TEX. R. APP.
33.1.





[3]Harkins
argues that meprobamate is a controlled substance, not a dangerous drug and,
because meprobamate is a byproduct of carisoprodol, carisoprodol must therefore
also be a controlled substance.  However,
Harkins concedes that carisoprodol is not included in the schedules or penalty
groups in the Texas Controlled Substances Act. 
See TEX. HEALTH
& SAFETY CODE ANN. ''
481.032, 481.102B.105.  Further, other courts have recognized that
carisoprodol is a dangerous drug.  See
Chambers v. State, No. 11‑03‑00035‑CR, 2004 WL 404125, at
*2 (Tex. App.CEastland
Mar. 4, 2004, pet. ref=d)
(not designated for publication); Approximately $42,850.00 v. State, 44
S.W.3d 700, 701 (Tex. App.CHouston [14th Dist.] 2001, no
pet.).





[4]Although
the State concedes that meprobamate is a controlled substance, the trial court
had directed a verdict on the controlled substance means of intoxication.  Therefore, by the end of the case, the
parties were only disputing whether Harkins was intoxicated by means of a
dangerous drug.





[5]Harkins=s
trial counsel argued, AAre
we going to go after people with other conditions who take their medicine as
prescribed?  You know, there is a thing
out there called reckless driving.  Maybe
that=s
what they should have done in this case, but this is not driving while
intoxicated.@





[6]The
prosecutor stated, ALooking
at the Court=s
definition, the legal definition of a dangerous drug, it qualifies as a
dangerous drug.  Though their expert said
it wasn=t a
dangerous drug, that=s the
medical definition.  In the State of
Texas in this Court, it=s a
dangerous drug.@





[7]Harkins
also contends that her right to present a defense was destroyed by the trial
court=s
failure to give the complete definition of Adangerous drug,@ the
lack of evidence to show that carisoprodol was a dangerous drug, and the trial
court=s Ainstruction
that having a prescription for the >dangerous drug[,]=@ was
no defense to DWI.  We have already
addressed the first contention above and concluded that if there was error, it
was harmless.

The voluntary taking of prescription drugs that impair mental or
physical faculties is not a defense to DWI. 
See TEX. PENAL CODE ANN. '
49.10 (Vernon Supp. 2008); Nelson v. State, 149 S.W.3d 206, 211 (Tex.
App.CFort
Worth 2004, no pet.).  Therefore, Harkins=s
third contention is also without merit, and we overrule this portion of her
third and fourth points.  We address her
second contention below in our sufficiency review.





[8]Officer
Klein was not trained to administer this particular test.





[9]The
jury also viewed the video of Harkins=s performance on the field
sobriety tests.





[10]Erica
Davis, the nurse who drew Harkins=s blood at the hospital on
the night of her arrest, also testified briefly for the State, apparently to
establish the chain of custody of the blood samples.





[11]Dr.
Skie defined dangerous drug as A[a] drug that could kill you@ or Adamage
your brain,@ and Aa
drug that causes physical harm . . . [of] a permanent
nature.@  O=Neal, on the other hand, was
not asked how she defined the term.





[12]See
Preston v. State, No. 11-98-00010-CR, 1999 WL 33747862, at *1
(Tex. App.CEastland
1999, no pet.) (holding that DPS chemical analyst=s
testimony was sufficient to prove substance was dangerous drug).





[1]E.g., Martinez
v. State, 924 S.W.2d 693, 699 (Tex. Crim. App. 1996) (holding that A[f]ollowing
the law as it is set out by the Texas Legislature will not be deemed error on
the part of a trial judge@); Riddle
v. State, 888 S.W.2d 1, 8 (Tex. Crim. App. 1994) (holding that A[a]
jury charge which tracks the language of a particular statute is a proper
charge on the statutory issue@), cert. denied, 514
U.S. 1068 (1995); Duffy v. State, 567 S.W.2d 197, 204 (Tex. Crim. App.)
(finding no error where charge tracked the language of the statute, despite
appellant=s
argument that the word Awhether@ made
the charge ambiguous and the word Athat@
should have been substituted), cert. denied, 439 U.S. 991 (1978).





[2]Wiley
v. State, 112 S.W.3d 173, 175 (Tex. App.CFort
Worth 2003, pet. ref=d).















 [COMMENT1]

Majority Opinion by Justice
McCoy; Concurring Opinion by Chief Justice Cayce