Opinion issued
March 29, 2012



In
The

Court of
Appeals

For
The

First District
of Texas

————————————

NO. 01-10-01109-CR

NO. 01-10-01110-CR

NO. 01-10-01121-CR

———————————

MOATH
NAIM AL-ADLI, Appellant

V.

THE
STATE OF TEXAS, Appellee



 



 

On Appeal from County Court At Law No. 1

Fort Bend County, Texas



Trial Court Case Nos. 09–CCR–141485
& 09–CCR–144300

 



 

 

MEMORANDUM
OPINION

          Appellant,
Moath Naim Al-Adli, pleaded guilty to two counts of the misdemeanor
offense of harassment in trial court cause number 09–CCR–141485 and to one count of harassment in trial court
cause number 09–CCR–144300.[1]  See Tex. Penal Code Ann. § 42.07
(Vernon 2011).  For each offense, the trial court
deferred adjudication of appellant’s guilt and placed him on community
supervision for 12 months.  Based on the
State’s later-filed motions to adjudicate, the trial court revoked appellant’s
community supervision, found appellant guilty, and sentenced him to 60 days in jail
for each offense.

          Raising
the same six issues in each appeal, appellant contends that (1) the trial court
abused its discretion by adjudicating him guilty because the evidence was
insufficient to show that he violated the terms and conditions of his community
supervision; (2) the trial court erred when it ordered appellant to serve his
jail time “straight” without consideration of good conduct time; and (3) he
received ineffective assistance of counsel because his attorney did not present
and secure a hearing on his motion for new trial.

          We affirm the judgment in each appellate cause, as modified.

Background

          Appellant
was charged with three offenses of misdemeanor harassment.  He pleaded guilty and was placed on 12 months
community supervision deferred adjudication for each offense.  The State later filed motions to revoke
appellant’s community supervision and to adjudicate appellant’s guilt.  

          The
State alleged in trial court cause number 09–CCR–144300 that appellant had violated the terms and
conditions of his community supervision by failing to complete his community
service requirements and “to file a letter of apology to the victim” of the
harassment within 90 days of the order. 
In both trial court cause number 09–CCR–141485 and 09–CCR–144300, the State requested the trial court to
revoke appellant’s community supervision and to adjudicate his guilt because he
had committed the offenses of evading arrest and making abusive 9-1-1 calls,
which were violations of the terms and conditions of his community supervision.

          The
trial court conducted an evidentiary hearing on the State’s motions at which a
number of witnesses testified, including appellant.  At the end of the hearing, with respect to
each offense, the trial court (1) found each of the grounds stated in the
State’s motions to be “true and supported by the evidence”; (2) revoked appellant’s
community supervision; (3) found him guilty; and (4) sentenced him to 60 days
in jail.  

          Appellant
filed a motion for new trial, which was overruled by operation of law.  These appeals followed.

 

 

Adjudication of Guilt

          In
his first issue, appellant contends that the trial court abused its discretion by
adjudicating him guilty because the evidence was insufficient to show that he
violated the terms and conditions of his community supervision by committing
the offense of making abusive 9-1-1 calls.

A.      Standard of Review

          A
trial court’s determination on a motion to adjudicate is reviewable in the same
manner as a determination of a motion to revoke community supervision.  Tex. Code Crim. Proc. Ann. art.
42.12, § 5(b) (Vernon Supp. 2011).  A revocation proceeding is neither criminal
nor civil in nature; rather, it is an administrative proceeding.  Canseco
v. State, 199 S.W.3d 437, 438 (Tex. App.—Houston [1st Dist.] 2006, pet. ref’d).
 At a revocation hearing, the State must
prove by a preponderance of the evidence that the defendant has violated a
condition of his community supervision.  Id. at 438–39.  The State satisfies its burden if the greater
weight of credible evidence creates a reasonable belief that the defendant
violated a condition of his probation as alleged by the State.  Solis v. State, 589 S.W.2d 444, 447 (Tex. Crim. App.1979); Armstrong v. State, 82 S.W.3d 444, 448
(Tex. App.—Austin
2002, pet. ref’d).  Proof of a single violation is sufficient to
support a revocation.  Canseco, 199 S.W.3d  at 439.

          Our
review of an order adjudicating guilt and revoking community supervision is
limited to determining whether the trial court abused its discretion in determining
that the defendant violated the terms of his community supervision. Rickels v. State, 202 S.W.3d 759, 763 (Tex. Crim.
App. 2006); Duncan v. State, 321
S.W.3d 53, 56–57 (Tex. App.—Houston [1st Dist.] 2010, pet. ref’d).
 We view the evidence in the light most
favorable to the trial court’s order.  Canseco, 199 S.W.3d at
439; Duncan, 321 S.W.3d at 57.
 As the trier of fact at a revocation
proceeding, the trial court determines the credibility of the witnesses and the
weight to be given to their testimony.  Armstrong, 82 S.W.3d
at 448.

B.      Analysis

          Appellant
contends that the trial court abused its discretion when it found that he
violated the terms of his community supervision by committing the offense of making
abusive 9-1-1 calls.  We disagree.

          Appellant
was found to have violated Penal Code section 42.061, which provides, as follow:

(a) In this section “9-1-1 service” and “public safety
answering point” or “PSAP” have the meaning assigned by Section 772.001, Health
and Safety Code.

 

(b) A person commits an offense if the person makes a
telephone call to 9-1-1 when there is not an emergency and knowingly or
intentionally:

 

(1) remains silent; or

 

(2) makes
abusive or harassing statements to a PSAP employee.

 

Tex. Penal
Code Ann. § 42.061 (a)–(b). 

          Pursuant to
Health and Safety Code section 772.001(13), a “public safety answering point”
is a “communications facility” that

(A) is operated continuously;

 

(B) is assigned the responsibility to receive 9-1-1 calls
and, as appropriate, to dispatch emergency response services directly or to
transfer or relay emergency 9-1-1 calls to other public safety agencies;

 

(C) is the first point of
reception by a public safety agency of a 9-1-1 call; and

 

(D) serves the jurisdictions in
which it is located or other participating jurisdictions.

 

Tex. Health & Safety
Code Ann. § 772.001(13) (Vernon 2010).

          Appellant
does not dispute that the evidence that shows that the abusive 9-1-1 calls were
made from his cell phone and that two of the witnesses identified appellant’s voice
as that of the 9-1-1 caller.  In
addition, the audiotape of the calls was admitted into evidence at the hearing,
and appellant testified at the hearing. 
Thus, the trial court was able to determine for itself whether it was
appellant’s voice on the tapes.  

          Here,
appellant contends that the State failed to offer sufficient proof to show that
the calls were made to a “public safety answering point,” or a “PSAP,” as
defined in section 772.001(13) of the Health and Safety Code.  More specifically, appellant asserts that the
State did not offer sufficient proof to show that the dispatchers answering the
9-1-1 calls (1) work in a dispatch facility that “operates continuously”; (2)
are “assigned the responsibility to receive 9-1-1 calls and, as appropriate, to
dispatch emergency response services directly . . .”; (3) are “the first point
of reception by a public safety agency of a 9-1-1 call”; and (4) “serve[] the
jurisdictions in which [the facility] is located or other participating jurisdictions.”  See
id.  

          At
the hearing, the State presented the testimony of Julia Franz, the night shift
communications supervisor at the College Station Police Department.  She testified that she answered one of the
abusive 9-1-1 calls made by appellant in the early morning hours of November 1,
2009.  Franz stated that her duties
include answering 9-1-1 calls and dispatching the police and fire
department.  

          The
State also presented the testimony of Matthew McClendon.  He testified that he was working as a
communications operator at the College Station Police Department on November 1,
2009, when he received an abusive 9-1-1 call that was later linked to
appellant.  When asked what his job
duties were he stated, “Dispatcher.  We
answer all 911 calls.  Dispatch police,
fire, EMS.”  

          To
reiterate, under our analysis, we view the evidence in the light most favorable
to the trial court’s judgment.  See Canseco, 199 S.W.3d at 439.  Based on the testimony indicating that (1)
Franz and McClendon worked at the communication center of the College Station
Police Department; (2) Franz was a night shift supervisor; and (3) Franz and
McClendon each answered the respective 9-1-1 call during the night shift in the
early morning hours, the trial court could have reasonably inferred from the testimony
that Franz and McClendon worked at a communications facility that is “operated
continuously.”  See Tex.
Health & Safety Code Ann. § 772.001(13)(A).  

          With
regard to the second element of the definition, Franz and McClendon each gave
direct testimony that it was his and her job duty to answer 9-1-1 calls and to
dispatch emergency response services.  See id. § 772.001(13)(B). McClendon
testified that “[w]e answer all 9-1-1 calls,” and Franz testified that she answered
9-1-1 calls.  Because these witnesses
testified that they “answered” 9-1-1 calls, the trial court could have
reasonably inferred that the College Station Police Department communication
center was a “first point of reception by a public safety agency of []
9-1-1 calls.”[2] See id.
§ 772.001(13)(C).

          With
respect to the last element, the testimony showed that the calls were made from
College Station, Texas and received at the College Station Police Department
communication center.  Thus, the trial
court could have inferred that Franz and McClendon worked at a communication
facility that serves the jurisdiction in which it is located.  See
id. § 772.001(13)(D).

          When
viewed in the light most favorable to the trial court’s judgment, Franz’s and
McClendon’s testimony is evidence from which the trial court could have
reasonably inferred that appellant’s abusive 9-1-1 calls were made to a “public
safety answering point” employee.  See In re M.C., No. 03-04-00409-CV, 2005
WL 1489699, at *2 (Tex. App.—Austin June 23, 2005, no pet.) (mem. op.) (holding
that, in juvenile justice case, evidence was sufficient to show that harassing phone
call was made to a “public safety answering point” employee as defined in the statute).
 We conclude that the record supports the
trial court’s finding that appellant violated the terms and conditions of his
community supervision in each case by making an abusive 9-1-1 call. [3]  See Tex. Penal Code Ann. § 42.061.  We hold that the trial court did not abuse
its discretion in revoking appellant’s community supervision and adjudicating
his guilt for each offense.  See Rickels, 202 S.W.3d at 763–64. 

          We
overrule appellant’s first issue in each appeal.

Ineffective Assistance of
Counsel

          In
his sixth issue, appellant contends that he received ineffective assistance of
counsel during the post-adjudication stage. 
Specifically, appellant asserts that his counsel “failed to present and
secure a hearing on his motion for new trial.” 


A.      Applicable Legal Principles

The Sixth Amendment to the
United States Constitution guarantees the right to reasonably effective assistance
of counsel in criminal prosecutions.  See U.S.
Const. amend. VI.  To show
ineffective assistance of counsel, a defendant must demonstrate both (1) that
his counsel’s performance fell below an objective standard of reasonableness
and (2) that there is a reasonable probability that, but for counsel’s
unprofessional errors, the result of the proceeding would have been different.  Strickland
v. Washington, 466 U.S. 668, 687–88, 694, 104 S. Ct. 2052, 2064, 2068
(1984); Andrews v. State, 159 S.W.3d 98,
101–02 (Tex. Crim. App. 2005).  Failure
to make the required showing of either deficient performance or sufficient
prejudice defeats the ineffectiveness claim.  See
Williams v. State, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009); Andrews, 159 S.W.3d at 101.

An appellant bears the
burden of proving by a preponderance of the evidence that his counsel was
ineffective.  Thompson v. State, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).  Any allegation of ineffectiveness must be
firmly founded in the record, and the record must affirmatively demonstrate the
alleged ineffectiveness.  Id. at 814.  We presume that a counsel’s conduct falls
within the wide range of reasonable professional assistance, and we will find a
counsel’s performance deficient only if the conduct is so outrageous that no
competent attorney would have engaged in it.  Andrews,
159 S.W.3d at 101.

B.      Analysis 

          Here,
appellant asserts that the lack of presentment of his new trial motion and lack
of a request for a new trial hearing by his counsel was tantamount to having no
representation at all during a critical stage. 
He asserts that he was “constructively denied the assistance of counsel
and, therefore, prejudice from counsel’s error is presumed.”  

          To support
his contention, appellant relies on Belcher
v. State, 93 S.W.3d 593 (Tex. App.—Houston [14th Dist.] 2002, pet. dism’d) (published order).  There, the court of appeals, in a plurality
order, held that the defendant received ineffective assistance of counsel
because his attorney was constructively absent during a critical stage of
trial.  Id. at 599.  In that case, the
trial court advised defense counsel that it planned to rule in favor of the
defense’s motion for a new trial but needed assistance in calculating the time
frame to rule on the motion.  Id. at 596–97.  The court
of appeals determined that the defendant’s counsel was absent during the motion
for a new trial stage because he had remained silent when the trial court had requested
his assistance in calculating the deadline to rule on the motion for a new
trial.  Id. at 599.  As a result, the
court of appeals abated the appeal and remanded the case to the trial court to
conduct a hearing on the motion for new trial. 
Id. at 600.  

          We do
not find Belchor to be controlling or
instructive when applied here.  In
contrast to Belchor, the record in the
instant cases does not contain the type of blatant conduct that affirmatively
shows counsel had disengaged from the proceedings and was no longer
representing his client.  Rather, as with
any other ineffective assistance of counsel claim, we must presume that counsel’s
conduct falls within the wide range of reasonable professional assistance, and
we will find counsel’s performance deficient only if the conduct is so
outrageous that no competent attorney would have engaged in it.  See Andrews,
159 S.W.3d at 101.  

          Appellant
contends on appeal that “counsel for [appellant] filed a motion for new trial
that presented serious questions about [appellant’s] diminished mental capacity
that was critically relevant to mitigation of punishment.”  In this regard, appellant asserted in his motion
for new trial that he suffered from Attention Deficit Hyperactivity Disorder
(ADHD), which he claimed was a fact “outside the record,” entitling him to a
new revocation hearing.  To support his
motion for new trial, appellant offered the affidavit testimony of his father,
a medical doctor, and of appellant’s treating psychiatrist.  Appellant’s father stated that appellant had
been diagnosed with ADHD in 2009.  Each affiant
stated that appellant’s ADHD made it difficult for him to comply with the terms
and conditions of his community supervision. 


          Appellant
correctly points out that the record contains no indication that counsel presented
the motion for new trial or pursued a hearing. 
See Tex. R. App. P. 21.6.  As a result, the motion for new trial was
overruled by operation of law.  See Tex.
R. App. P. 21.8.  Appellant
asserts that because “counsel neither presented the motion to the trial court
nor secured a ruling on it . . . an ostensible meritorious motion was overruled
without it having been considered.”

          Significantly,
the record contains no explanation for counsel’s conduct.  As a result, we are unable to determine
whether counsel lacked any tactical or strategic reasons for his conduct.  See Lopez
v. State, 343 S.W.3d 137, 143–144 (Tex. Crim. App. 2011); see also Landers v. State, 110 S.W.3d
617, 625 (Tex. App.—Houston [14th Dist.] 2003, pet. ref’d) (refusing to
speculate why post-trial counsel did not obtain hearing on motion for new trial).  We
will not speculate that counsel did not have a reason for his conduct.  See
Landers, 110 S.W.3d at 625.

          Moreover,
a defendant is not entitled to a hearing on a motion for new trial unless the
motion and supporting affidavits reflect that reasonable grounds exist for
granting a new trial.  Espinoza v. State, 185 S.W.3d 1, 6 (Tex.
App.—San Antonio 2005, no pet.).  Here,
appellant asserted in his motion for new trial that he should receive a new revocation
hearing because the information regarding his ADHD is “outside the
record.”  

          Reasonable
grounds exist for granting a motion for new trial on newly-discovered evidence
only when the motion meets the requirements of article 40.001 of the Code of
Criminal Procedure, which provides that “[a] new trial shall be granted an
accused where material evidence favorable to the accused has been discovered
since trial.”  Tex. Code Crim. Proc. Ann. art. 40.001 (Vernon 2006).  Interpreting this statute, the Court of
Criminal Appeals has held that a defendant is entitled to have a motion for new
trial granted when

(1) the newly discovered evidence was unknown to him at
the time of trial; (2) his failure to discover the new evidence was not due to
his lack of due diligence; (3) the new evidence is admissible and not merely
cumulative, corroborative, collateral, or impeaching; and (4) the new evidence
is probably true and will probably bring about a different result in a new
trial.

 

Wallace
v. State, 106 S.W.3d 103, 108 (Tex. Crim. App. 2003).  

          Here,
the affidavit of appellant’s father, supporting the motion for new trial,
indicated that appellant’s ADHD had been diagnosed in 2009.  The revocation hearing occurred on December
10, 2010.  Thus, the evidence regarding
appellant’s condition was not newly discovered evidence entitling him to a
hearing on his motion or to a new revocation hearing.  Counsel is not ineffective for failing to
undertake futile actions.  See Mooney v. State, 817 S.W.2d 693, 698
(Tex. Crim. App. 1991); see also Ex parte
Chandler, 182 S.W.3d 350, 356 (Tex. Crim. App. 2005) (“[A] reasonably
competent counsel need not perform a useless or futile act[.]”).

          We
hold that appellant has not met his burden to demonstrate ineffective
assistance of counsel by a preponderance of the evidence because he has not
shown that his trial counsel’s performance fell below an objective standard of
reasonableness.  See Strickland, 466 U.S. at 687–88, 694, 104 S. Ct. at 2064, 2068; Andrews, 159 S.W.3d at 101–02.  Accordingly, we overrule appellant’s sixth
issue in each appeal. 

Good Time Conduct

          Appellant points out that
each order adjudicating his guilt provides, “It is the ORDER of this Court that
the said Defendant Moath Al-Adli,
who has been adjudged guilty of the offense of harassment, be, and is hereby
sentenced to confinement in the Fort Bend County Jail for 60 straight days.”  The italicized word “straight” is a
handwritten interlineation by the trial court.  The orders further state, in a handwritten
notation, “Defendant to report to the Fort Bend County Jail to serve this sentence
at 8:00 a.m. on December 18, 2010, sentence to be served flat out, no good
conduct time.”  In his fifth issue,
appellant contends that the trial court erred when it ordered appellant to
serve his 60 day sentence “straight” and without consideration of good
time.  The State agrees. 

          Article
42.032 of the Texas Code of Criminal Procedure provides,

The sheriff in charge of each county jail may grant
commutation of time for good conduct, industry, and obedience.  A deduction not to exceed one day for each day
of the original sentence actually served may be made for the term or terms of
sentences if a charge of misconduct has not been sustained against the
defendant.

 

Tex. Code
Crim. Proc. Ann. art. 42.032, § 2 (Vernon Supp. 2011).  The sheriff has the sole discretion to award
good-time credit.  See Ex parte Acly,
711 S.W.2d 627, 627 (Tex. 1986); Jones v.
State, 176 S.W.3d 47, 52 (Tex. App.—Houston
[1st Dist.] 2004, no pet.).  A
trial court has no authority to limit the operation of the good-time credit.  See Ex parte Roosth, 881 S.W.2d 300, 301
(Tex. 1994); Kopeski v. Martin, 629 S.W.2d 743, 745 (Tex. Crim.
App. 1982); Jones, 176 S.W.3d at 52.  

          Accordingly,
we sustain appellant’s fifth issue in each appeal and modify the judgment in
each case to delete the word “straight” and the phrase “sentence to be served flat
out, no good time,” as set out in context above.

 

 

 

 

Conclusion

          We
affirm the judgment of the trial court in each appeal, as modified. 

 

 

                                                                      Laura
Carter Higley

                                                                      Justice


 

Panel consists of Chief
Justice Radack and Justices Higley and Brown.

Do not publish.  Tex. R. App. P. 47.2(b).











[1]         For trial court cause number 09–CR–141485, the
corresponding appellate cause numbers are 01–10–01109–CR and 01–10–01110–CR.  The corresponding
appellate court cause number for trial court cause number 09–CR–144300 is 01–10–01121–CR.





[2]         In his brief, appellant asserts, “[I]t
appears that the dispatch office manned by McClendon and Franz may not have
been the first point of reception of the 9-1-1 calls in question, or is not
generally the first such point of reception,” because Franz testified that she
contacted the “Brazos County 9-1-1 district” to determine if someone there had
handled the calls.”  Appellant takes this
testimony out of context.  Franz
testified that, in her efforts to determine to whom the telephone number
belonged, she contacted the Brazos County 911 District “which dispatches for
Bryan and Brazos County” to determine whether it had previously taken any calls
from that number as well.  This testimony
also implies that 9-1-1 calls for College Station, as opposed to Bryan and
outlying Brazos County, are not handled by the Brazos County 911 District but
are taken directly by the College Station Police Department’s communication
center.   





[3]
Because this ground
supports the trial court’s judgments, we do not reach appellant’s second,
third, and fourth issues in which he challenges the trial court’s additional findings
indicating that he violated other terms of his community supervision.  See
Moore v. State, 605 S.W.2d 924, 926 (Tex. Crim. App. 1980) (explaining that
single ground supporting trial court's action ends inquiry into appellant’s
challenge); Canseco v. State, 199
S.W.3d 437, 439 (Tex. App.—Houston [1st Dist.] 2006, pet. ref’d) (same).